[No. B083857. Second Dist., Div. One. Dec. 21, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANGEL PLAZA, Defendant and Appellant.

**COUNSEL**

Gerson S. Horn for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VOGEL (Miriam A.), J.**—We reject Michael Angel Plaza's claims of evidentiary, instructional and sentencing error and affirm his conviction of five sex offenses.

## FACTS

Plaza and Elizabeth W. had a sexually intimate relationship for about nine months. About a week after the relationship ended, Elizabeth returned home to find several abusive messages from Plaza on her answering machine. Later that night, he called several more times and, when she answered, he called her names and accused her of being unfaithful. About 11 p.m., Plaza arrived at Elizabeth's apartment building. He was crying and upset, and Elizabeth let him in. When he entered, Plaza (carrying three bottles of wine) went directly to Elizabeth's bedroom, shut the door, and did not come out for about five minutes.

When Plaza emerged, he was verbally abusive and he accused Elizabeth of betraying him. He said he loved her and hated her at the same time, that

he "wanted to touch [her] legs," and that he "want[ed] to fuck" her. The phone rang and Elizabeth talked to a neighbor. Plaza yelled at Elizabeth, asking "if that was another one of [her] boyfriends that [she] was having sex with" and told her to "tell him to come over because [Plaza would] kick his ass and kill him." When Elizabeth hung up, Plaza continued his name-calling, then picked up the phone and told Elizabeth to call her former boyfriend (Anthony B.) because Plaza knew she "want[ed] to have sex with [Anthony]." Plaza held Elizabeth by the throat while he dialed Anthony's number. When he reached Anthony's answering machine, Plaza tightened his grip on Elizabeth and the machine recorded Elizabeth's "gasping" voice.

When Plaza hung up, Elizabeth told him she had to go to the bathroom. Plaza said he "wanted to watch a cheap whore go to the bathroom" and pushed her down the hall. As she sat on the toilet, Plaza said "he wanted a whore blow job from a whore sitting on a toilet." When Elizabeth refused, Plaza told her to "shut up," to "be good" and to not do anything "weird," and then put his penis in her mouth. (Count 1.)[1] After a few minutes, Plaza withdrew his penis and told Elizabeth to go into the bedroom.

When Elizabeth refused, Plaza said "you might as well go into the bedroom because you're going to get fucked anyway," picked her up and pushed her into the bedroom. He pushed her onto the bed and leaned on top of her, called her names, told her to "be a good girl" or he would "really hurt" her, and added that she "might as well enjoy it" because she "was going to get fucked anyway." When Elizabeth screamed and tried to get away, Plaza grabbed her by the throat, squeezed until she could hardly breathe or speak, ripped off her underwear and inserted his fingers into her vagina. (Count 4.)[2]

Plaza then removed his fingers from her vagina and decided he wanted to hear the messages on Elizabeth's answering machine. Although he remained on top of Elizabeth, he turned on the machine and listened to the messages he had left earlier that day. His agitation increased and, with his fist, he punched three holes in the wall above Elizabeth's head. He then told Elizabeth to orally copulate him, threatened to hurt her if she refused and motioned to the holes in the wall to illustrate his point. He slid his body over her face, used his fingers to pry open her mouth, and placed his penis in her mouth. (Count 2.)[3]

A few minutes later, Plaza removed his penis from Elizabeth's mouth, slid down (although he remained on top of her), repeatedly slapped her face and

[1]Plaza was convicted of this count (forcible oral copulation).
[2]Plaza was convicted of this count (genital penetration by a foreign object).
[3]Plaza was convicted of this count (forcible oral copulation).

called her names over and over again for a period of several minutes. He then kicked her legs apart and forced his penis inside her vagina. (Count 3.)[4] After a few minutes, he withdrew his penis.

Plaza then flipped Elizabeth so she was on top of him, again forced his penis inside her vagina and, while inside her, again slapped her repeatedly on the face and continued calling her names. (Count 6.)[5] After a few minutes, he withdrew his penis.

Plaza then grabbed Elizabeth's head and said "give me a whore blow job." He pushed her down, put his penis in her mouth and continued calling her names and threatening to hurt her if she did anything "weird." (Count 5.)[6] The phone then rang. It was Anthony, who had returned home and heard Elizabeth's gasping message. Plaza answered the phone and when Anthony asked to speak to "Wizzie" (Elizabeth's nickname), Plaza told him, "Wizzie doesn't live here anymore." Plaza hung up. Anthony called back, Plaza answered, and Anthony said he was "Bill." Plaza hung up. Anthony called a third time but no one answered. Plaza demanded to know who Bill was and why he was calling Elizabeth at 1 a.m. He continued to slap her and call her names. He then pushed her down and put his penis inside her mouth, telling her she "was going to be the only one that he was going to have sex with" and that she "would only love him." (Count 7.)[7]

Meanwhile, Anthony picked up two friends who lived near Elizabeth and went to her apartment building. Anthony yelled up to Elizabeth's window, calling her by name and saying "this is the L.A.P.D." Elizabeth ran out of the apartment, and Anthony and his friends called the police and detained Plaza until they arrived.

Plaza was charged with four counts of forcible oral copulation (counts 1, 2, 5 and 7), one count of genital penetration by a foreign object (count 4), and three counts of forcible rape (counts 3, 6 and 8). Plaza's motion to exclude a taped statement he had given to the police was denied and the case was tried to a jury, with the People presenting evidence of the facts described above. Plaza testified in his own defense, admitting he left the messages on Elizabeth's answering machine and that he was at her apartment but claiming the sex was consensual. The jury convicted Plaza of three counts of forcible oral copulation (counts 1, 2 and 7), one count of rape (count 3) and one count of forcible vaginal penetration with a foreign object

[4]Plaza was convicted of this count (forcible rape).
[5]Plaza was acquitted of this count (forcible rape).
[6]Plaza was acquitted of this count (forcible oral copulation).
[7]Plaza was convicted of this count (forcible oral copulation).

(count 4). Plaza was sentenced to state prison for a term of 30 years. He appeals.

DISCUSSION

I.

██ Plaza contends the trial court improperly sentenced him to five consecutive six-year terms under Penal Code section 667.6, subdivision (d).[8] We disagree.

A.

Under subdivision (d) of section 667.6, "[a] full, separate, and consecutive term shall be served for [specified sex crimes] if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed *sexually assaultive* behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (Italics added.)

B.

The trial court explained its application of section 667.6, subdivision (d), as follows: "I . . . find that the five crimes of which [Plaza] was found guilty was [sic] each committed upon separate occasions. In so determining and finding I have considered and concluded that between the commission of each sex crime [Plaza] had a reasonable opportunity to reflect upon his actions and nevertheless resumed his sexually assaultive behavior.

"The first act[] of forced oral copulation was in the victim's bathroom. The next act of forced sex occurred when [Plaza] forced the victim into the bedroom where he penetrated her vagina with his fingers. This attack was followed by a pause while [Plaza] listened to the victim's telephone answering machine [and then punched three holes in the wall above Elizabeth's head]. [¶] The third act, forcible rape, followed this pause when [Plaza] forced the victim onto his penis. [¶] The fourth act followed by changing from penal [sic] penetration to forcing the victim to copulate him orally. This

---

[8]All section references are to the Penal Code.

required time to reflect, change body positions and allow for time for [Plaza] to cease his assaultive behavior which he did not do. [¶] Finally the fifth act . . . was preceded by [Plaza] first forcing the victim's mouth open with his hand covered by blood and plaster so that he could and did force his penis into her mouth[,] warning her not to try or do anything 'weird[,]' [c]learly recognizing . . . and [with] conscious awareness of what he was doing."[9]

## C.

According to Plaza, both the evidence and the trial court's description show he "never ceased his sexually assaultive behavior" but merely changed positions and locations, never stopped verbally assaulting Elizabeth, and continuously restrained her. It follows, he claims, that the consecutive sentences cannot stand. That is not how we read the law or the record.

In 1986, the Supreme Court interpreted the former version of subdivision (d) of section 667.6 to permit full consecutive sentences only when "the perpetrator temporarily lost or abandoned the opportunity to continue his attack: such opportunity is lost when the victim becomes free of any ongoing criminal activity; it is abandoned when the offender keeps the victim within his control but engages in some significant activity unrelated to continuing his attack." (*People* v. *Craft* (1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585].) Later that year, the Legislature amended section 667.6, subdivision (d), adding the language quoted in part A, *ante*, "to abrogate the decision in *People* v. *Craft* . . . and to establish an objective test for determining whether sex crimes against a single victim occurred on separate occasions." (Stats. 1986, ch. 1431, § 2, p. 5129.)

The amended language was first considered in *People* v. *Corona* (1988) 206 Cal.App.3d 13 [253 Cal.Rptr. 327]. In *Corona,* the defendant accosted the victim in her home, forced her into a car, drove her to another location, and while they were in the car put his finger in her vagina, removed his finger and kissed her genitals, put his penis in her vagina for several minutes, then left the car. About five minutes later, the defendant returned to the car, renewed his advances, and "engaged in another bout of copulation." (*Id.* at p. 15.) The defendant pled guilty to kidnapping, assault with a deadly weapon, two counts of rape, sexual assault with a foreign object, forcible

---

[9]As noted, Plaza was convicted of three of the four charged acts of oral copulation (counts 1, 2 and 7), one of the three charged counts of rape (count 3), and the charged act of forcible vaginal penetration by a foreign object (count 4). Elizabeth's testimony identified four acts of oral copulation (Plaza was acquitted of count 5) but only two acts of rape (leaving count 8 without support in the record, a point made immaterial by Plaza's acquittal of counts 6 and 8). All of the counts of which Plaza stands convicted are supported by substantial evidence (and Plaza does not contend otherwise).

oral copulation and robbery. (*Id.* at p. 14.) Consecutive terms were imposed for the four sex offenses. (*Id.* at p. 16.) On appeal, the defendant objected to the consecutive sentences and the People *conceded* there were only two episodes of sex offenses, one ending with the first rape, the other consisting of the second rape after the defendant returned to the car. (*Ibid.*) Accordingly, the Third District upheld consecutive sentences on the two separate offenses under subdivision (d) of section 667.6 (and affirmed the other consecutive sentences under subdivision (c) of the same statute). (206 Cal.App.3d at pp. 17-18.)

The only other case construing the current version of subdivision (d) of section 667.6 is *People* v. *Pena* (1992) 7 Cal.App.4th 1294 [9 Cal.Rptr.2d 550]. In *Pena,* the defendant approached the victim as she was entering her home, pushed her inside and onto a rollaway bed in the living room, and raped her. He got off, twisted her by the legs violently, then orally copulated her. Then he left. (*Id.* at p. 1299.) On these facts, Division Seven of our Court concluded that the trial court should not have imposed full consecutive terms under subdivision (d) of section 667.6 (although the sentences were upheld under subdivision (c) of the same statute). As the court explained, however, "once the trial judge resolves the issue of 'separate occasions,' an appellate court is 'not at liberty to overturn the result unless no reasonable trier of fact could decide that there was a reasonable opportunity for reflection.' " (*People* v. *Pena, supra,* 7 Cal.App.4th at p. 1314.) Not surprisingly, Division Seven concluded that a defendant's change of positions is insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, "especially where the change is accomplished within a matter of seconds." (*Id.* at p. 1316.)

Applied to our case, *Corona* and *Pena* support the trial court's imposition of full consecutive sentences. The trial court expressly found, as to each separate offense, that Plaza "had a reasonable opportunity to reflect upon his actions and nevertheless resumed his sexually assaultive behavior." Clearly, the evidence supports that finding. The first act of forced oral copulation (count 1) was in the victim's bathroom. Although Plaza continued to restrain Elizabeth, his assaultive *sexual* behavior then stopped as he pushed her into the bedroom, forced her onto the bed, grabbed her by her throat, ripped off her underwear and inserted his fingers into her vagina (count 4). Plaza then again stopped his assaultive *sexual* behavior, listened to Elizabeth's answering machine, then punched three holes in the wall. Only then did he commit another act of oral copulation (count 2).

At that point, although Plaza did not get up, he stopped what he was doing, removed his penis from Elizabeth's mouth, slid down, repeatedly

slapped her face and called her names over and over again for a period of about five minutes and, only after he was through verbally abusing her, kicked her legs apart and raped her (count 3). Although Plaza was not convicted of the rape charged in count 6 or the oral copulation charged in count 5, those acts of intercourse and oral copulation plus three telephone calls preceded the final act of oral copulation of which Plaza was convicted (count 7).

It is clear, therefore, that in between each of the five separate offenses, Plaza "had a reasonable opportunity to reflect upon his . . . actions and nevertheless resumed [his] sexually assaultive behavior." (§ 667.6, subd. (d).) ■ As the statute tells us, the duration of time between the acts and the retention of the *opportunity to attack* again are not themselves determinative. (*Ibid.*) As the cases tell us, where, as here, the trial court finds the time and the circumstances were sufficient to afford the defendant with the required opportunity to reflect upon his actions and he thereafter resumed his *sexually* abusive conduct, that finding will be upheld unless no reasonable trier of fact could have so concluded. (*People* v. *Corona, supra,* 206 Cal.App.3d at p. 18, fn. 2; *People* v. *Pena, supra,* 7 Cal.App.4th at p. 1314.) ■ Since we agree with the trial court's assessment, it follows that the sentences will be upheld.[10]

## II.

■ Plaza contends the statement he gave to the police was inadmissible under *Miranda.*[11] Assuming without deciding that his statement should have been excluded, the error was harmless by any standard. (*People* v. *Johnson* (1993) 6 Cal.4th 1, 32-33 [23 Cal.Rptr.2d 593, 859 P.2d 673]; *People* v. *Sims* (1993) 5 Cal.4th 405, 446 [20 Cal.Rptr.2d 537, 853 P.2d 992]; *People* v. *Cahill* (1993) 5 Cal.4th 478, 511 [20 Cal.Rptr.2d 582, 853 P.2d 1037].) There were no issues of identity (Plaza admitted he was there and admitted they had sex, claiming only that it was consensual) and Elizabeth's version of the events was supported by the answering machine recordings, Anthony's testimony, photographs of the wall above her bed and photographs of

[10]Our conclusion that Plaza was properly sentenced under subdivision (d) of section 667.6 makes it unnecessary to consider the People's argument that the sentence would in any event be proper under subdivision (c) of the same statute.

[11]When Plaza was arrested, he was "upset about his . . . predicament" and made some remarks to the arresting officers on the way to the station—he grumbled about "niggers," "fucking fags," and so on. One of the arresting officers told Plaza that he (the officer) was gay and was offended by Plaza's remarks. When he was interviewed at the station, Plaza told the same officer he was talking to him only because he was gay. Plaza then went on to tell the police he was "stoned" while he was driving to Elizabeth's apartment. He also mentioned the wine he had with him when he arrived. There was no more to it than this.

Elizabeth's bruises. In short, the evidence was overwhelming and the statement about which Plaza complains was only technically incriminating. The error, if that's what it was, was harmless beyond a glimmer of a doubt.

## III.

Finally, Plaza contends the trial court should not have instructed the jury according to CALJIC No. 2.62 (when a defendant testifies, adverse inferences may be drawn by his failure to deny or explain evidence against him). We disagree. The validity of this instruction has been upheld (*People v. Ballard* (1991) 1 Cal.App.4th 752, 756 [2 Cal.Rptr.2d 316]) but even if there was something wrong with it, this error was harmless for the same reasons stated in part II, *ante*.

### Disposition

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 28, 1996. Mosk, J., was of the opinion that the petition should be granted.