[No. C063851. Third Dist. June 13, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEXANDER ROLANDO SOLIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, III, IV, and V of the Discussion.

1212

**COUNSEL**

John Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Heather S. Gimle, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—Defendant was convicted by a jury of three counts of forcible rape (Pen. Code, § 261, subd. (a)(2)) and one count of receiving stolen property (*id.*, § 496, subd. (a)) and was sentenced to full consecutive terms on the rape counts. (Further undesignated section references are to the Penal Code.)

He appeals, contending (1) defense counsel's failure to object to evidence of prior uncharged acts of violence amounted to ineffective assistance; (2) the legal standard for imposing full consecutive sentences under section 667.6, subdivision (d), where multiple sex offenses occur on "separate occasions" is unconstitutionally vague; (3) he was denied the right to a jury trial on whether the three rapes occurred on separate occasions; and (4) there is insufficient evidence of one of the three rapes or, in the alternative, the trial court erred in failing to instruct on the definition of sexual intercourse necessary for rape.

We requested supplemental briefing on two additional issues: (5) whether the trial court provided an adequate statement of reasons for imposing full consecutive sentences on the three rape offenses and (6) whether there is sufficient evidence to support a finding that the three rapes occurred on separate occasions.

We reject each of defendant's contentions. However, we conclude the evidence does not support the trial court's implied finding that the third rape occurred on a separate occasion. We therefore remand for resentencing.

### FACTS AND PROCEEDINGS

During much of 2008, defendant and the victim, Jenna B., were in a dating relationship. In May of that year, defendant assisted the victim in moving out of her dormitory room at California State University, Chico. Another student, K.S., was moving out of her dorm room around the same time. At one point, K.S. left the door to her room open slightly while she took things to her car. Inside the room, she left a large black purse containing, among other things, a laptop computer. When K.S. returned to her room, the purse and its contents were gone. Sometime later, defendant gave the purse to the victim as a gift and sold the computer to his roommate for $500. At the time of the sale, defendant knew the computer had been stolen.

On October 18, 2008, defendant and the victim were together at her residence and got into an argument about defendant eating the rest of a banana bread she had made and calling the victim "a fat Arab bitch," "slut," and "whore." The victim asked defendant to leave and dropped him off at his residence. Around midnight, the victim sent defendant a text message inviting him to come over and sleep with her. Defendant responded with a message that it was "up to [her]." The victim replied, "never mind."

Nevertheless, around 2:00 a.m. on October 19, defendant showed up at the victim's residence and knocked on her bedroom window. The victim woke up and let him in. Defendant was belligerent and angry. The victim asked him to leave, but he refused.

Around this time, defendant got a telephone call from his ex-girlfriend who asked where defendant had been. Defendant responded that he had "been dating a fucking slut." The victim again asked defendant to leave but he refused. He grabbed the victim's cell phone and tried to break it and then lay down on the floor to sleep.

The victim grabbed defendant's leg and began dragging him out of her room. Defendant started kicking the victim and she kicked him back. Defendant stood up and overturned a nightstand and chair. He threatened to knock the victim out.

A week or so earlier, the victim had told defendant she might be pregnant and he appeared to be pleased at the prospect. However, the victim later learned she was not pregnant. While arguing with defendant in her room during the early morning hours of October 19, the victim told defendant that if she had been pregnant, she would have aborted the fetus. She was purposely trying to hurt him in order to induce him to leave, but he would not.

The victim eventually screamed for her roommate, J.D., who opened her bedroom door and found defendant and the victim standing nearby. The victim was crying and complained that defendant had her cell phone. J.D. told defendant to give the victim back her phone and he complied. J.D. returned to her room and closed the door.

The victim and defendant returned to her room, where the victim attempted to call 911. Defendant grabbed her phone and took the battery out of it. The victim later went to sleep in her room and defendant slept on a couch in the common area of the residence.

The next morning, defendant knocked on the victim's door and she let him in. She returned to her bed. Defendant was still upset and she asked him to leave. He refused. The victim asked for her phone battery and defendant told her she could have it after she gave him a ride home. She refused.

Defendant approached the victim's bed and pulled her toward the middle of it. He grabbed her foot and pushed it behind her head. He got on the bed and placed his body on top of her. The victim was wearing only panties and a T-shirt. Defendant began ripping the victim's panties and eventually pulled them down over her legs, while the victim struggled to stop him. Defendant "shoved" his finger inside the victim's vagina and said he would make it so she could not have babies. Defendant was smiling and appeared to be enjoying himself. He then removed his finger and inserted it in her anus. The victim told defendant to stop and he responded, "Shut the fuck up."

Defendant removed his finger, stood up and said, "I can put my dick in you right now." Defendant removed his clothes, got on top of the victim, held her legs back with his hands, and inserted his penis in her vagina. She begged him to stop and he again said, "Shut the fuck up." Defendant said, "How does it feel to be the first girl I raped?"

Defendant pulled his penis out of the victim's vagina and told her to turn over. She refused. He told her she had a choice between her "ass" and her mouth. She then complied. Defendant inserted his penis inside the victim again, while holding her neck with one hand and her hair with the other.

Defendant then removed his penis and began rubbing it over her "butt." He again inserted his penis in her vagina. Finally, defendant removed his penis, moved up the victim's back and ejaculated on the side of her face.

Defendant got up and got dressed and the victim drove him home. When she returned to her residence, the victim met J.D., who was leaving for the gym. The victim was crying and told J.D. defendant had raped her. J.D. called the police.

The police responded to the scene and the victim was taken to a hospital for examination. The victim had a lot of bruising on her body, mostly on her legs. She also had semen in her hair. The examination of the victim's vagina was consistent with her report of the incident.

While the police were at the scene, defendant arrived to retrieve his wallet that he had left behind. He was detained and later taken to the police station. While there, the victim placed a pretext call to defendant and repeatedly asked him why he had done "it." Defendant professed not to know what she was talking about but eventually said, "[b]ecause I'm stupid, I'm an idiot." At one point, the victim said, "I've never seen this side of you," and defendant responded that he had "never seen this side of [himself] either." Defendant further said, "I know I was wrong. I know you know that I'm not like that."

Defendant was charged with three counts of forcible rape (§ 261, subd. (a)(2)), two counts of sexual penetration with a foreign object (§ 289, subd. (a)(1)), and one count of receiving stolen property (§ 496, subd. (a)). He was convicted by a jury of the rape and stolen property counts, but acquitted of the sexual penetration charges. Defendant was sentenced to the middle term of two years for the property offense and full consecutive middle terms of six years on each of the rapes, for an aggregate sentence of 20 years.

DISCUSSION

I

*Uncharged Acts Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

*Vagueness of "Separate Occasions" Standard*

Defendant received full consecutive terms on each of the rapes based on a finding by the trial court that the offenses occurred on "separate occasions,"

---

*See footnote, *ante*, page 1210.

within the meaning of section 667.6, subdivision (d). Defendant contends the full consecutive terms cannot stand, because the legal standard for finding offenses were committed on "separate occasions" is unconstitutionally vague. He further contends that, in the event this contention has been forfeited by counsel's failure to object, he received ineffective assistance of counsel.

■ "[A] statute must be sufficiently definite to provide adequate notice of the conduct proscribed. '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' " (*People v. Superior Court (Caswell)* (1988) 46 Cal.3d 381, 389 [250 Cal.Rptr. 515, 758 P.2d 1046].) Vague statutes are proscribed both because they fail to alert the public of the conduct required or prohibited and because they do not provide sufficient guidelines for enforcement. (*Id.* at pp. 389–390.)

Section 667.6, subdivision (d), reads: "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) [including forcible rape (§ 667.6, subd. (e)(1))] if the crimes involve separate victims or involve the same victim on separate occasions.

"In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions. . . ."

Defendant contends the vagueness of the foregoing language is evident from the fact the Court of Appeal has not been able to settle on a single standard for assessing whether multiple sex offenses were committed on separate occasions. He cites as support *People v. Corona* (1988) 206 Cal.App.3d 13 [253 Cal.Rptr. 327] (*Corona*), *People v. Pena* (1992) 7 Cal.App.4th 1294 [9 Cal.Rptr.2d 550] (*Pena*), *People v. Plaza* (1995) 41 Cal.App.4th 377 [48 Cal.Rptr.2d 710] (*Plaza*), *People v. Garza* (2003) 107 Cal.App.4th 1081 [132 Cal.Rptr.2d 831] (*Garza*), and *People v. King* (2010) 183 Cal.App.4th 1281 [108 Cal.Rptr.3d 333] (*King*). However, as we shall explain, there is no inconsistency in the foregoing appellate decisions.

In *Corona*, the defendant removed the victim's pants, put his finger in her vagina, kissed her genitals and then put his penis in her vagina. After five or six minutes, he departed. Five minutes later, the defendant returned and the

victim asked why he was doing this to her. The defendant placed a knife against her thigh and said if she did not cooperate, " 'this will hurt you more.' " (*Corona, supra,* 206 Cal.App.3d at p. 15.) He then resumed his sexual assault. (*Ibid.*) The defendant was convicted of eight offenses, including four sex offenses, and was sentenced on all four sex offenses under section 667.6, subdivision (d). (206 Cal.App.3d at p. 16.)

On appeal, the defendant argued the trial court erred in imposing full consecutive terms on the four sex offenses. The People conceded the convictions for penetration with a foreign object and oral copulation that preceded the first rape did not occur on separate occasions and we accepted that concession. (*Corona, supra,* 206 Cal.App.3d at p. 16.) We explained: "There is no evidence of any interval 'between' these sex crimes affording a reasonable opportunity for reflection; there was no cessation of sexually assaultive behavior hence defendant did not 'resume[] sexually assaultive behavior.' " (*Id.* at p. 18.) However, we also concluded consecutive sentencing on the two rapes was proper because, after the first rape, the defendant left and returned a short time later to resume his assault. (*Id.* at pp. 17–18.)

In *Pena,* the defendant forced the victim into her home and onto a bed where he raped her. He then "got off of her, twisted her by the legs violently, and orally copulated her." (*Pena, supra,* 7 Cal.App.4th at p. 1299.) The defendant was convicted of burglary, rape and forcible oral copulation. (*Id.* at p. 1300.) The trial court found the two sex crimes were committed on separate occasions and imposed full consecutive sentences. (*Id.* at p. 1313.)

The Court of Appeal found the evidence insufficient to support the separate occasions finding. Relying in part on *Corona* and our conclusion that the digital penetration, oral copulation and first rape in that case did not occur on separate occasions, the court concluded: "[A]ppellant did not have a 'reasonable opportunity to reflect' between his acts of rape and forcible oral copulation. As was the case in *People v. Corona,* nothing in the record before this court indicates *any* appreciable interval 'between' the rape and oral copulation. After the rape, appellant simply flipped the victim over and orally copulated her. The assault here was also continuous. Appellant simply did not cease his sexually assaultive behavior, and, therefore, could not have 'resumed' sexually assaultive behavior." (*Pena, supra,* 7 Cal.App.4th at p. 1316.)

In *Plaza,* the defendant put his penis in the victim's mouth while they were in the bathroom. He then took the victim into her bedroom and onto her bed. There, he ripped off her underwear and inserted his fingers into her vagina. After withdrawing his fingers, he listened to the victim's answering machine while still on top of her. He got angry, hit the wall several times, and then

again forced her to orally copulate him. The defendant removed his penis from her mouth, slid down her body, slapped her face and called her names for several minutes. He then kicked the victim's legs open and inserted his penis in her vagina. After that, he removed his penis, turned the victim over, and again inserted his penis in her vagina. He then forced the victim to orally copulate him once again. The defendant was interrupted by several phone calls, after which he forced the victim to orally copulate him. The ordeal ended when one of the victim's friends arrived at her house. (*Plaza, supra,* 41 Cal.App.4th at pp. 380–381.)

The defendant was charged with eight separate sex offenses, and was convicted of five of them. (*Plaza, supra,* 41 Cal.App.4th at pp. 381–382.) He was sentenced to five full consecutive terms of six years pursuant to section 667.6, subdivision (d). (41 Cal.App.4th at p. 382.) On appeal, the defendant argued he could not be sentenced under section 667.6, subdivision (d), because he never ceased his assaultive behavior. (41 Cal.App.4th at p. 383.) The Court of Appeal disagreed and affirmed. Relying on both *Corona* and *Pena,* the court explained: "The trial court expressly found, as to each separate offense, that Plaza 'had a reasonable opportunity to reflect upon his actions and nevertheless resumed his sexually assaultive behavior.' Clearly, the evidence supports that finding. The first act of forced oral copulation (count 1) was in the victim's bathroom. Although Plaza continued to restrain Elizabeth, his assaultive *sexual* behavior then stopped as he pushed her into the bedroom, forced her onto the bed, grabbed her by the throat, ripped off her underwear and inserted his fingers into her vagina (count 4). Plaza then again stopped his assaultive *sexual* behavior, listened to Elizabeth's answering machine, then punched three holes in the wall. Only then did he commit another act of oral copulation (count 2). [¶] At that point, although Plaza did not get up, he stopped what he was doing, removed his penis from Elizabeth's mouth, slid down, repeatedly slapped her face and called her names over and over again for a period of about five minutes and, only after he was through verbally abusing her, kicked her legs apart and raped her (count 3). Although Plaza was not convicted of the rape charged in count 6 or the oral copulation charged in count 5, those acts of intercourse and oral copulation plus three telephone calls preceded the final act of oral copulation of which Plaza was convicted (count 7)." (*Id.* at pp. 384–385.)

In *Garza,* the defendant was convicted of 18 offenses, including 15 sex offenses, and received full consecutive terms on three of them. (*Garza, supra,* 107 Cal.App.4th at p. 1084.) We affirmed the imposition of consecutive terms, explaining: "After defendant forced the victim to orally copulate him, he let go of her neck, ordered her to strip, punched her in the eye, put his gun to her head and threatened to shoot her, and stripped along with her. That sequence of events afforded him ample opportunity to reflect on his actions and stop his sexual assault, but he nevertheless resumed it. Thus, defendant's

first act of rape was committed on a separate occasion from the forcible oral copulations. [Citation.] [¶] Similarly, defendant had an adequate opportunity to reflect upon his actions between the time he inserted his finger in the victim's vagina and the commission of the first rape. During this interval, defendant (1) began to play with the victim's chest; (2) put his gun on the back seat; (3) pulled the victim's legs around his shoulders and, finally, (4) forced his penis inside her vagina. A reasonable trier of fact could have found the defendant had adequate opportunity for reflection between these sex acts and that the acts therefore occurred on separate occasions for purposes of application of section 667.6, subdivision (d)." (*Id.* at pp. 1092–1093.)

Finally, in *King*, a police officer stopped a motorist and proceeded to grope her under the ruse of performing a patdown search. The officer was convicted of sexual battery, two counts of unlawful genital penetration, and two counts of unlawful sexual penetration. (*King, supra*, 183 Cal.App.4th at pp. 1286–1287.) In rejecting the defendant's challenge to consecutive sentencing, the court concluded: "Here, the trial court specifically determined that King, who sexually assaulted Nicole under the ruse that he was performing a lawful search, used the fingers of one hand to penetrate Nicole's vagina. When he saw lights and a car drove by, he momentarily paused to look around uneasily, and then reinserted the fingers of his other hand in a separate assaultive act. The court observed the fact that King 'removed his finger when the lights went by. He looked uneasy; showing he knows what he's doing was wrong.' And, later, the court reiterated that, once King 'noticed the lights of Marilyn's car . . . he removed his fingers, looked around and looked uneasy. He could have stopped at that point. This was the opportunity giving [King] the opportunity to reflect about his actions. [¶] After the coast was clear, this intelligent experienced man then decided to re-insert a finger with his other hand for about another 25 seconds.' Accordingly, the court specifically found 'that this qualifies for a separate full consecutive term.' " (*Id.* at p. 1325.)

Defendant argues the foregoing cases reflect what is *not* required for a finding of separate occasions, i.e., no need for movement from one room to another and no need for a particular length of delay between separate acts, but do not explain what *is* required. According to defendant, "the courts have inexorably moved in the direction of finding that repeated sexual acts, without more, are sufficient to support an inference that the defendant had a reasonable opportunity to reflect and nevertheless continued the abuse." Defendant argues the courts have thereby emptied the "separate occasions" requirement of any meaning and left defendants to guess at its meaning.

We disagree. In *People v. Jones* (2001) 25 Cal.4th 98 [104 Cal.Rptr.2d 753, 18 P.3d 674], the state high court noted the Court of Appeal has "not

required a break of any specific duration or any change in physical location" in order to qualify for sentencing under section 667.6, subdivision (d). (25 Cal.4th at p. 104.) Nor need there be any "obvious break" in the defendant's behavior. (*Ibid.*) Nevertheless, the question remains whether, between specific sex acts, "the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." (§ 667.6, subd. (d).) All of the cases cited by defendant agree on this principle.

■ "In determining whether a statute is sufficiently certain to comport with due process standards, the court will 'look first to the language of the statute, then to its legislative history, and finally to California decisions construing the statutory language.' " (*People v. Estrada* (1995) 11 Cal.4th 568, 581 [46 Cal.Rptr.2d 586, 904 P.2d 1197].) ■ The language of section 667.6, subdivision (d), requires that, in determining whether crimes against a single victim occurred on separate occasions, the trial court "shall consider" whether the defendant had a reasonable opportunity to reflect between the crimes. (§ 667.6, subd. (d).) Although this language does not make such factor a litmus test for determining the issue, the courts have nevertheless done so.

■ Thus, the question is whether the requirement that the defendant had a reasonable opportunity to reflect between sex acts is too vague to satisfy due process. We conclude it is not. A statute is not unconstitutionally vague "so long as an accused can reasonably be held to understand by the terms of the statute that his conduct is prohibited." (*Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 493 [134 Cal.Rptr. 630, 556 P.2d 1081].) It takes no particular depth of reasoning to be able to distinguish between a situation where a perpetrator engages in a continuous course of conduct involving multiple sex offenses with no break in between and one in which the individual offenses are separated by some other activity, either of the defendant or another, that interrupts the assault and affords the perpetrator an opportunity to reflect on what he or she is doing. The activity need not involve any type of movement of the victim and need not be of any particular duration. It may be nothing more than car lights going by that cause the perpetrator to pause and reflect before proceeding, as in *King,* or some activity not amounting to a sex offense, like pausing to listen to the victim's answering machine or punching the wall, as in *Plaza.* We believe a perpetrator can reasonably be held to recognize this distinction.

Having concluded a vagueness challenge to section 667.6, subdivision (d), should properly have been rejected, we need not consider defendant's alternate claim of ineffective assistance based on counsel's failure to raise the vagueness challenge.

III–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The convictions are affirmed. The matter is remanded for resentencing on count 5. Following resentencing, the trial court shall amend the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

Raye, P. J., and Butz, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 12, 2012, S203945.

---

*See footnote, *ante*, page 1210.