Filed 11/24/15  P. v. Thompson CA3

<u>**NOT TO BE PUBLISHED**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077770 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F02662) |
| v. | |
| DAVID ALLEN THOMPSON, | |
| Defendant and Appellant. | |

A jury found defendant David Allen Thompson guilty of committing 14 sexual offenses involving two minors.  He now appeals, contending (1) the trial court prejudicially erred, thereby violating his state and federal due process rights to a fair trial, by admitting evidence of a prior sexual offense, and (2) the trial court erred in imposing consecutive sentences.  We conclude the trial court did not err in admitting the evidence, but did err in imposing consecutive sentences as to some counts.  We also conclude the

1

trial court failed to impose a sentence as to one count. Therefore, we will remand the matter to the court for resentencing, and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 7, 2007, when A.G. was 11 years old, defendant molested her. She had gone home early from school and was in her room dancing when defendant entered. He pulled her by her hair to her sister's bed, where she lay flat on her back and defendant got on top of her. She told him to stop, but he placed both hands around her neck, causing her pain. He began to rub her breasts, and said, "you know you like it." She did not respond. He began to rub her thighs, and then rubbed her vagina under her clothes. His fingers penetrated her vagina. While touching her vagina, he repeated, "you know you like this." Defendant made her stand up and undressed her. He put her back onto the bed, knelt on the ground, and licked her vagina. His hands were on her thighs, holding her down. He held her by the neck while he touched and kissed her breasts. He also kissed her on the mouth and touched her buttocks. The entire encounter lasted about 30 minutes, during which she was frightened and felt she could not escape. It ended when his telephone rang. She then ran to the garage and hid from him.

About a year prior to this incident, defendant had taken A.G. and H.G., then 12 or 13 years old, to the river, where he directed them to undress. H.G. removed her shirt and bra, but A.G. did not until defendant told her she had to. She only removed her shirt, but defendant removed her bra, which made her feel "gross." Defendant was wearing only his undergarments. H.G. suggested he remove them, but he did not. H.G. went behind a bush to relieve herself, and defendant purportedly went to check on her. They were gone for about 10 minutes. The next day, defendant approached A.G. while she lay on the couch, told her H.G. had heard her tell their mother. He put his hands down her pants and touched her vagina, rubbing inside the outer vaginal lips. She told him she had not said anything to her mother, and bit his arm to get away from him. He told her he would

2

kill her if she told her mother. On prior occasions, he had physically abused A.G. and she had seen him physically abuse H.G. and their younger brother. She had also observed defendant and H.G. on the couch, with their clothes partially removed and H.G. "grinding" on top of him, and on another occasion had seen the two of them in bed together with defendant on top of H.G. A.G. also recounted a time when she was seven years old and defendant told her to pull down her pants and spread her buttocks so that he could take a picture. When she tried to take the photograph from him, he smacked her, tore up the photograph, flushed it down the toilet, and told her he would hurt her if she told her mother.

In May 2007, after A.G. reported the molestation, she moved to Idaho to live with her father. Thereafter, in September 2007, H.G. also moved to her father's house in Idaho, though she went unwillingly. Though she had repeatedly denied having an inappropriate relationship with defendant, at trial, H.G. testified that she and defendant had a sexual relationship when she was 13 years old. Defendant and her mother had married when H.G. was about six years old. Initially, she and defendant did not get along, and he was physically abusive towards her. When she turned 13 and was going through puberty, he began to be nice to her. At first he would hold her hand, then he began to kiss her on the lips, neck, and chest. He began to touch her breasts and vagina when she was 13 and 14 years old. She had low self-esteem and felt he was the only person who loved her. She and defendant had intercourse more than 10 times. Even when defendant moved out of her mother's house following A.G.'s disclosure, H.G. continued to have a sexual relationship with him, including fellatio and intercourse. After H.G. moved to her father's house, she maintained contact with defendant. They arranged for defendant to come to Idaho so that he and H.G. could run away together.

In October 2007, defendant picked up H.G. from her school in Idaho and they drove off together. He was arrested in Kansas a few days later following a traffic stop;

3

H.G., then 14 years old and reported as a runaway, was in the car with him. She was returned to her father. During the few days that they were driving together, defendant and H.G. kissed but did not have intercourse. Defendant subsequently escaped custody, and was arrested in Texas in August 2008.

A jury found defendant guilty of multiple offenses based on the March 2007 incident: aggravated sexual assault of a child (count one—oral copulation of A.G.; count eight—digital penetration of A.G.'s vagina) and multiple lewd acts with a child under the age of 14 (count two—defendant's mouth on A.G.'s vagina; count three—defendant's hand on A.G.'s breast; count four—defendant's mouth on A.G.'s breast; count five— defendant's hand on A.G.'s vagina; count six—defendant's hand on A.G.'s buttocks; count seven—defendant kissing another part of A.G.'s body). The jury also found defendant guilty of committing a lewd act with a child under the age of 14 (count nine— defendant's hand on A.G.'s vagina) for the described incident on the couch the year prior. With respect to H.G., the jury found defendant guilty of committing five lewd acts with a minor under the age of 14 (counts ten through fourteen). The jury also sustained a multiple victim enhancement.

The trial court sentenced defendant to an aggregate term of 390 years to life plus a consecutive 65 years. This is comprised of consecutive sentences of 30 years to life for all counts except count two (for which it stayed imposition of sentencing), and an additional consecutive five-year term for defendant's prior strike offense as to each sentenced count.[1]

---

[1] It was pleaded and proved that defendant had suffered a prior serious and violent felony conviction within the meaning of Penal Code section 667, subdivision (e), requiring that his sentence be double the otherwise provided term of punishment, in addition to any other applicable enhancements.

## DISCUSSION

## I. Admission of Evidence

Defendant contends the trial court erred in admitting evidence, pursuant to Evidence Code section 1108, of an uncharged sexual offense defendant committed with the grandson of his adoptive parents.[2]  He claims the evidence should have been excluded because it was remote in time, was dissimilar to the abuse in the instant matter, was not documented, may have distracted the jurors, and was unduly prejudicial because it involved a young male victim.  He further contends this error violated his state and federal constitutional due process rights to a fair trial.  We conclude the trial court did not err in admitting the evidence.

Our review is limited to the trial court's ultimate ruling, not its interim rulings or its reasoning, and if the court properly admitted the evidence, we affirm.  (See *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)  We review the ruling under the deferential abuse of discretion standard (*People v. Avila* (2014) 59 Cal.4th 496, 515), and we reverse only if the trial court's ruling was " 'arbitrary, capricious or patently absurd' " and caused a " 'manifest miscarriage of justice' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124).  Here the trial court did not err.

In general, evidence of defendant's uncharged conduct is not admissible to prove defendant has a criminal disposition or propensity.  (§ 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.)  However, when a defendant is charged with a sexual offense, evidence of the defendant's commission of another sexual offense is admissible as propensity evidence, so long as it is not rendered inadmissible by section 352.  (§ 1108, subd. (a); *People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164; *People v. Falsetta* (1999) 21 Cal.4th 903, 912, 915, 922.)  Pursuant to section 352, a trial court may

---

[2]  Undesignated statutory references are to the Evidence Code.

exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. In determining whether to admit evidence of an uncharged sex offense, the trial court "must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, at p. 917.)

Prior to trial, the People moved in limine to introduce evidence of prior uncharged acts, some involving defendant's sister and some involving a grandson of defendant's adoptive parents, D.C. Defendant's sister recalled defendant sexually assaulting her on multiple occasions when they were children: He had touched her breasts and vagina, and forced her to touch his penis. D.C. reported that when he was four or five years old defendant fondled his penis, forced him to touch defendant's penis, and forced him to fellate defendant.

Initially, the court found the offenses against both the sister and D.C. fell within the ambit of section 1108, and further weighed the balancing factors of section 352. Specifically, it considered the remoteness in time of the prior abuse, the degree of similarity or dissimilarity of those events to the current offenses, whether the prior offenses were adjudicated, and the relative seriousness of the prior offenses. The court found the remoteness in time was mitigated by defendant's extensive periods of incarceration in the intervening years, and that the existence of two prior and non-isolated

6

acts strengthened the probative value of the evidence. Therefore, the trial court admitted the testimony of both victims.

Thereafter, at defendant's request, the trial court reconsidered its ruling. In light of the fact that evidence of the abuse of defendant's sister was being admitted, it excluded evidence of the abuse of D.C., as cumulative and because it entailed "a slightly greater risk of prejudice because of the gender involved," and was remote in time. The People argued that defendant's sister appeared to be in hiding and may not be testifying at trial. Though the trial court acknowledged that would affect its balancing under section 352, it declined to reconsider its ruling again unless the People were unable to find the sister despite continued efforts.

When the People were unsuccessful in their further efforts to locate defendant's sister, they renewed their motion to admit the testimony of D.C. Over defendant's objection, the trial court, in light of the change of circumstances and after reviewing its notes from its prior consideration of the issue, admitted D.C.'s testimony. It explained its renewed analysis as follows:

" . . . In this matter I have always maintained that in the Court's view, notwithstanding the remoteness of the charge, and notwithstanding the fact that the [section] 1108 conduct involves sexual conduct with a male rather than a female, it is still highly probative in the Court's view of a character or predisposition of the defendant to exploit a young person and to take advantage of a position of trust of someone known to him so that he may obtain his own personal sexual gratification at—at the cost of another vulnerable child.

"In this regard in my initial evaluation . . . the Court had in mind when I reevaluated at the request of defense the posture of the case would [e]volve—and I went back and looked at it—numerous counts of sexual molestation of the defendant on his sister . . . . And there's no question that the nature of the conduct is at least incrementally

7

more probative as there's a closer similarity to the type of sexual molestation that was occurring with the sister than with the young man[, D.C.]. I mean among other things the age is different and the gender. So relatively speaking I was confronted with admitting a decision by which I had admitted numerous conduct—incidents of sexual conduct with a young female, against in a position of a breach of trust, and a violation of a position of trust to a known relative, and a more isolated incident involving a violation of that trust with a young man.

"In the Court's view, relatively speaking, the incident with [D.C.], therefore, stood as somewhat less probative than that offered by [the sister]. And additionally, the concern as it relates to the potential for prejudice or confusion of issues in the mind of the jury would be that in offering additionally the evidence of [D.C.], that the cumulative nature of the evidence might well result in a potential for prejudice.

"I will candidly admit I considered it a very, very close question, and felt that the scales—that the safer course was to exclude the evidence of [D.C.] in that balancing examination.

"With [the sister's] testimony out of the question, if I were evaluating this case, having never known about the admission, only the facts of the case as they have been presented, but not that the People were seeking to admit [the sister's] testimony, I would be examining [D.C.]'s conduct, the probative value of the conduct, the potential for prejudice, the potential for undue consumption of time, the potential that it might confuse or mislead the jury in the context of obviously the factors the Courts have articulated, the relative strength, the relative—whether one is more inflammatory than the other, whether one has been adjudicated, whether one is unduly remote. So these and other factors I have given great thought to, and I renew the evaluation with this new set of facts, and I continue to believe, as I always have throughout the articulation of the issues in the case, that the evidence of the offenses committed against [D.C.], if, in fact, they are believed

8

by the jury, are highly probative on the underlying and key issue in this case. And considering all the other factors that the Court is compelled to weigh under [section] 352, I do not find that the probative value of that evidence when being offered alone is substantially outweighed by the potential for prejudice, or undue consumption of time, or confusion of issues."

At trial, D.C. testified defendant was the adoptive son of D.C.'s grandparents. On more than one occasion, when D.C. was about five years old and defendant was about 13 years old, defendant would take D.C. to the chicken coop at his grandparents' house and would have D.C. touch defendant's penis and would put his mouth on D.C.'s penis. Defendant's adoptive father also testified about a letter he received from defendant in 1997, stating defendant had not done to anyone else what he did to D.C., and seeking forgiveness from defendant's adoptive parents.

Defendant takes issue with what he deems to be the trial court's cursory balancing of the section 352 factors when the trial court reconsidered admission of evidence of the molestation of D.C. on its third ruling on the matter. Defendant apparently ignores the trial court's detailed recitation of the factors it balanced in making its initial ruling, which permitted the evidence of defendant's abuse of D.C. to be admitted. Defendant instead focuses on the trial court's findings with respect to its reconsideration of that ruling, in which it excluded evidence of the sexual abuse of D.C. Though the trial court did note at that time that the abuse of D.C. was remote and was *comparatively* more prejudicial and less similar than the abuse of defendant's sister, the trial court continued to perceive the evidence as relevant and probative. It also noted that if evidence of the abuse of defendant's sister was to become unavailable, that fact would alter the balancing of the section 352 factors in determining whether to admit evidence of D.C.'s sexual abuse. In issuing its final ruling on the topic, the trial court indicated that it had revisited its notes from its prior assessments on the topic, recalled that the second ruling was a "close call,"

9

and found that in the absence of evidence regarding the abuse of defendant's sister, it would not be unduly prejudicial to admit evidence of defendant's abuse of D.C.

We agree with the trial court that in considering the relevant factors, it was not unduly prejudicial to admit evidence of defendant's sexual abuse of D.C. Though the incidents were remote in time, that factor does not in and of itself render the evidence inadmissible. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 992 [several cases have affirmed admission of evidence of prior sexual crimes that occurred decades prior]; *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [where crimes are substantially similar, remoteness may be mitigated]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 ["No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible."].) That is especially true here, where defendant was incarcerated for a significant portion of time between the uncharged and charged offenses. (*People v. Walker* (2006) 139 Cal.App.4th 782, 807.) Additionally, the uncharged and charged offenses are significantly similar: Defendant took advantage of younger children in familial settings to touch their genitalia. And, though the trial court noted that the uncharged offense may be slightly prejudicial because it involved a male victim, we conclude that evidence is unlikely to be inflammatory because defendant was so young at the time of the offense, and because in the current offenses he used force and violence and repeated the abuse with much greater frequency. Neither do we believe the jury was likely to be confused or distracted by D.C.'s very brief testimony about the events. Additionally, the lack of documentation of any adjudication with respect to the uncharged offense is mitigated by evidence presented by defendant's adoptive father of defendant's letter seeking forgiveness for what he did to D.C. Accordingly, the trial court did not abuse its discretion in admitting evidence of defendant's uncharged sexual offense.

10

## II. Consecutive Sentencing

Defendant contends the trial court erred by imposing consecutive sentences for counts one, three, four, five, six, and seven because the acts underlying each of these convictions were committed on a single occasion without a reasonable opportunity to reflect. We conclude the trial court erred in imposing consecutive sentences for counts three through eight because they were part of a single occasion not separated by a reasonable opportunity to reflect.

Penal Code section 667.6, subdivision (d) provides that the trial court must impose a consecutive term for each enumerated sexual offense committed by a defendant where "the crimes involve separate victims or involve the same victim on separate occasions." It further provides that, "[i]n determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (*Ibid.*) A finding of separate occasions requires neither a break of any specific duration, nor any change in location. (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 (*Garza*).)

In imposing consecutive sentences, the trial court expressly found that counts one, four, five, six, seven, and eight "are separate and distinct acts of violence separate in time for which the defendant had an opportunity to reflect and consider and chose to undertake a separate and distinct act of violence and offense against the victim in that case." The trial court also expressly stated that count three was a "separate, distinct, sexual assault that occurred against the victim." In light of these findings, "we may reverse only if no

11

reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*Garza*, *supra*, 107 Cal.App.4th at p. 1092.)

In *Garza*, the defendant forced the victim to orally copulate him six or seven times, let go of her neck, ordered her to take off her clothes, punched her, threatened to shoot her, got on top of her, put his finger in her vagina, " 'play[ed]' " with her chest, put his gun down, pulled her legs around his shoulders, and repeatedly raped her. (*Garza*, *supra*, 107 Cal.App.4th at p. 1087.) In upholding imposition of consecutive sentences by the trial court, the *Garza* court held that the "defendant had an adequate opportunity to reflect upon his actions between the time he inserted his finger in the victim's vagina and the commission of the first rape. During this interval, defendant (1) began to play with the victim's chest; (2) put his gun on the back seat; (3) pulled the victim's legs around his shoulders[;] and, finally, (4) forced his penis inside her vagina." (*Id.* at pp. 1092-1093.) *People v. Plaza* (1995) 41 Cal.App.4th 377, 384-385 also upheld imposition of consecutive sentences where evidence revealed the first act of forced oral copulation occurred in the victim's bathroom, then he pushed her into the bedroom and onto the bed, grabbed her by the throat, removed her underwear, digitally penetrated her, stopped to listen to the victim's answering machine, punched the wall, committed another act of oral copulation, removed his penis from the victim's mouth, slapped her face and called her names for about five minutes, kicked her legs apart, then raped her.

In *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316, however, the court held it was error to impose full-term consecutive sentences pursuant to Penal Code section 667.6 because the sexually assaultive behavior was continuous where the defendant raped the victim, "flipped the victim over," and orally copulated her. *People v. Corona* (1988) 206 Cal.App.3d 13 came to a similar conclusion. There, the defendant kissed the victim, removed her pants, kissed her again, put his finger into her vagina, kissed her genitals,

12

raped her, stopped, got out of the car, returned five minutes later, and raped her again. (*Id.* at p. 15.) Though the *Corona* court upheld consecutive sentences for the two rapes, it held it was error to impose consecutive sentences for the sex crimes preceding the first rape because "there was no cessation of sexually assaultive behavior" to afford the defendant "a reasonable opportunity for reflection." (*Id.* at p. 18.)

Here, defendant pulled A.G. to the bed, got on top of her, began to rub her breasts (count three) and said "you know you like it." He held her by the neck and kissed her breasts (count four). He began to rub her thighs, then rubbed her vagina (count five) under her clothes. He repeated "you know you like this." His fingers penetrated her vagina (count eight). He also kissed her on her inner thighs and face (count seven) and touched her buttocks (count six). Defendant then made A.G. stand up, and he undressed her. He put her back onto the bed and licked her vagina (counts one and two), while he held her down by her thighs.

Unlike in *Plaza* and *Garza*, other than the break in the assault while defendant undressed A.G., the acts were a continuous succession of abuses. There was no evidence of defendant stopping, even to change his or A.G.'s position, or of him stopping to punch a wall or listen to a telephone call. Therefore, we agree with defendant that counts three through seven were committed on a single occasion without a reasonable opportunity to reflect.

However, it appears defendant has misconstrued the record with respect to which act constituted count eight and which act constituted count one. He contends he should have received a single consecutive sentence for counts one and three through seven because they all preceded the break in action when defendant made A.G. stand to be undressed. Rather, count one (and two) were based on defendant's oral copulation of A.G. *after* he undressed her and placed her back onto the bed. We therefore construe defendant's argument against a consecutive sentence on count one as an identical

13

argument directed at count eight. On the evidence before us, we cannot conclude that any reasonable trier of fact would find defendant had a reasonable opportunity to reflect before resuming his behavior between counts three, four, five, six, seven, or eight. Therefore, the trial court erred in imposing consecutive sentences for each count numbered three through eight; only one consecutive sentence should have been imposed for this continuous sexual abuse.

We reject, however, defendant's contention that the sentences imposed violate the double jeopardy clause or his federal due process rights. The double jeopardy clause precludes multiple punishments for the *same* offense (*Jones v. Thomas* (1989) 491 U.S. 376, 381 [105 L.Ed.2d 322, 331]), but here there are *multiple* offenses. At issue in determining whether consecutive sentences should be imposed for those offenses is whether they were committed on separate occasions, meaning whether defendant had a reasonable opportunity to reflect between each offense. Defendant's argument improperly conflates these two inquiries. Though a defendant's due process rights may be violated by imposition of an unauthorized sentence (see *Wasko v. Vasquez* (1987) 820 F.2d 1090, 1091, fn. 2) or where sentencing procedures are not followed (see *Walker v. Deeds* (1995) 50 F.3d 670, 672-673), here defendant's sentence was not unauthorized and the trial court adhered to established sentencing procedures. Rather, the sentences imposed on counts three through eight are merely not supported by the facts by a preponderance of the evidence. (*People v. Groves* (2003) 107 Cal.App.4th 1227, 1231-1232.) Accordingly, the People are entitled to a new sentencing hearing as to counts three through eight.

### III. Stay of Sentencing on Count Two

The trial court stayed imposition of sentencing on count two pursuant to Penal Code section 654, which prohibits punishment for more than one crime arising from a single act, because it found that count to be "an alternative statement to Count One."

14

Though neither party addresses the issue, we note that the trial court was required to impose sentence on count two and stay execution of that sentence, rather than failing to impose a sentence at all.**3**  (See *People v. Duff* (2010) 50 Cal.4th 787, 796; see also *People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.)  The sentence on count two as it currently stands is unauthorized.  Because we are already remanding for resentencing as to counts three through eight, we remand for resentencing as to this count as well instead of modifying the sentence on this appeal.

## DISPOSITION

We remand this matter to the trial court for resentencing as to counts two through eight in a manner consistent with this opinion.  As modified, the judgment is affirmed.

      BUTZ      , Acting P. J.

We concur:

      DUARTE      , J.

      HOCH      , J.

---

**3**  In the interest of judicial economy, we have resolved this error without first requesting supplemental briefing.  Any party claiming to be aggrieved may petition for rehearing. (Gov. Code, § 68081.)