Filed 9/23/14  P. v. Quijano CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065968 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1200869) |
| ROBERT JOE QUIJANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed as modified with directions.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Joe Quijano appeals from a judgment convicting him of several sex offenses based on his molestation of four boys.  His convictions include three counts

involving victim R.H. (two counts of forcible oral copulation and one count of lewd act with the special circumstance of administering a controlled substance), and three misdemeanor counts of annoying or molesting a child involving the other three victims (J.A., Y.R. and J.S). He argues (1) there is insufficient evidence to support the finding that he administered a controlled substance, and (2) the court erred in giving the jury a general instruction that the prosecution need not prove motive because sexual motive is an element of the offense of annoying or molesting a child. We reject his challenge to the sufficiency of the evidence, and find the instructional error harmless.

Defendant also asserts sentencing errors related to the felony counts (counts 1 through 3) concerning R.H. The court imposed consecutive indeterminate sentences of 15 years to life for each of these counts. Additionally, for count 3 (lewd act with a drug administration finding), the court imposed an additional three-year term for a controlled substance enhancement. As to count 3, defendant maintains the court erred in imposing both a three-year sentence and a 15-year-to-life sentence under two distinct statutes based on the controlled substance finding. We agree, and accordingly reverse the three-year sentence enhancement. We also reject the Attorney General's argument that the case should be remanded for resentencing because the 15-year-to-life sentence for count 3 was legally unauthorized.

As to counts 1 and 2 (forcible oral copulation), defendant argues the court failed to exercise its discretion to decide whether the offenses against R.H. occurred on the same occasion so as to permit concurrent sentences rather than consecutive sentences. We reject this contention of reversible error.

2

We modify defendant's sentence to strike the three-year enhancement for count 3. As we shall explain, defendant's total prison term is modified to (1) an indeterminate term of 45 years to life and (2) a determinate term of two years. As so modified, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

The charges against defendant (age 22) were based on his sexual touching of three 14-year-old boys (J.A., Y.R., and J.S.) in November 2011, plus his aggravated sexual conduct against 13-year-old R.H. in December 2011. The victims were friends who "hung out" together, including having frequent sleepovers. Even though defendant was older, he socialized with the group, including at some of the sleepovers, and the victims considered him to be a "cool guy" and a friend whom they trusted. The boys sometimes smoked marijuana with defendant, and some of them had seen him use methamphetamine.[1] The victims testified that at the sleepovers sometimes defendant would sleep next to them and hug them, and in the morning would playfully "trap" them so they could not get away. The victims did not feel the touching was sexual until after they each experienced a distinct incident with defendant.

The incidents with J.A. and Y.R. occurred during sleepovers at defendant's home while the victims and defendant were sleeping next to each other on the floor. J.A. testified he was lying on his back asleep, and he woke up when he felt defendant

_____

[1]     Y.R. testified he saw defendant using "crystal" on one occasion, and the drug looked like a white "little powder." J.A. testified he had seen defendant using "crystal meth."

3

"hugg[ing]" him. Defendant touched J.A.'s shoulder with his hand, and then moved his hand slowly to J.A.'s stomach and then moved it "a little bit lower than [J.A.'s] belly button." At this point J.A. grabbed defendant's hand and removed it, and rolled away. In the morning J.A. did not say anything to his friends about the incident because they did not "see [defendant] like that" and he did not think his friends would believe him. Later, after J.S. disclosed an incident with defendant, J.A. confided in J.S. about what had occurred. J.A. and J.S. thought it was defendant's use of drugs that was making him do this.

Y.R. testified that at a sleepover, he was sleeping on his back when he woke up in the morning to find defendant's hand on his chest. Defendant moved his hand in circles down to Y.R.'s stomach and then to his belly button. Y.R. grabbed defendant's hand and took it off, saying, " 'That's gay. Don't do that.' " Y.R. did not say anything to his friends because he thought defendant was "just messing around"; however, when he learned what defendant had done with R.H. he changed his mind.

The incident with J.S. occurred at a sleepover at the home of defendant's cousin when J.S. was sleeping next to defendant on a bed. J.S. woke up when he felt defendant touching him. Defendant was "[d]ry humping" J.S. by rubbing his body "back and forth" against J.S.'s body, and defendant's hand was in J.S.'s shorts "[g]rabbing [his] penis" under his underwear. J.S. was shocked; he moved defendant's hand away; and defendant then touched J.S.'s "butt" and continued "dry humping" him until J.S. moved defendant's hand and turned away. In the morning, J.S. told J.A. what had occurred, and J.A. confided what he had experienced with defendant.

4

The aggravated sexual conduct with R.H. occurred at a party in December 2011. R.H. had been drinking alcohol and smoking marijuana and he was intoxicated. Defendant took R.H. to a bedroom, and upon their arrival defendant either pushed him, or he fell, into a closet. When R.H. was sitting in the closet, defendant shoved a pipe in his mouth. R.H. had never seen the pipe before and did not know what was in it. After R.H. took a "hit" from the pipe, he felt as if "everything was slow" and he was "gone" and "black[ed] out." He remembered three sexual things occurring, but did not remember the order in which they happened. Defendant forced R.H. to his knees on the floor, pulled his hair to move his head back and forth, and made him orally copulate defendant. Also, R.H. remembered being on the floor lying on his stomach with his pants pulled down to his thighs, and defendant was lying on top of R.H.'s back. R.H. did not remember what happened during this incident because he was "blacked out" but afterwards his "butt" hurt.[2] Also, defendant orally copulated R.H. The sexual assaults stopped when someone walked into the room. R.H. left the room and told defendant's cousin, Reina, what happened, and later told his other friends.

Defendant's sister, Carissa, testified that during the December party she saw defendant, R.H. and a cousin in the bedroom. Defendant was standing holding a glass pipe, and R.H. was leaning against the foot of the bed with his head down and appeared to be "passed out." On another occasion Carissa had seen an iPod video of defendant smoking a "white drug" out of a long glass pipe with a "ball at the end." When Carissa

_____

[2]    R.H. told the police that defendant "dry humped" him, but at trial testified he said this because he was embarrassed.

5

saw defendant in the bedroom with the pipe and she asked what they were doing, defendant did not respond but shut the bedroom door. Later, R.H. came out of the bedroom and asked to talk to defendant's cousin, Reina, outside. Carissa saw R.H. outside "crying and hysterical," saying his "butt" and his thumb hurt.

On December 7, 2011, J.S. showed a school resource officer threatening text messages he had received, and during an ensuing investigation the authorities learned about the molestation claims and interviewed each victim. When the authorities contacted defendant at his residence on January 9, 2012, they found crystal methamphetamine in a baggie in his pants pocket. During a recorded interview with a detective on that same date, defendant said he had been using methamphetamine since he was 17 years old; he had smoked methamphetamine the night before the interview; his main drugs were methamphetamine and marijuana; he smoked marijuana in either cigarettes or a pipe; and he would typically "binge" on methamphetamine for a few days and then stop for a few days.[3]

Regarding the sexual molestation claims, defendant admitted he hugged the boys while they were sleeping during sleepovers, but initially denied he touched them sexually. He acknowledged that at the December party he went into a bedroom with R.H., but stated R.H. merely watched him roll a marijuana "joint" and then they went outside and smoked it. He told the detective that at the party he only had marijuana and

---

[3] When questioning defendant about his methamphetamine use the night before the interview, the detective asked defendant if he "smoke[d] a bowl," apparently referring to defendant's use of a pipe.

"Zig-Zag[]" papers, and he did not have methamphetamine or a pipe. Towards the end of the interview, defendant's demeanor changed and he began crying. He said the detective already knew "everything"; he did not "care anymore"; whatever the boys said was true; and he "knew it was wrong" but voices in his head told him to "[j]ust go do it."

At trial, when questioned on cross-examination about R.H.'s claim that defendant had drugged him, the investigating detective acknowledged he did not know what drug was involved. However, the detective testified the initial report made "it sound[ ] like methamphetamine."

Testifying on behalf of the defense, defendant's cousin (Reina) testified she saw defendant leave the December party at about 1:00 or 2:00 a.m., and she thereafter saw R.H. dancing and being talkative and drunk in a "fun way." At about 3:00 a.m., Reina and Carissa saw R.H. "passed out" on a bedroom floor with his pants unzipped and his "penis hanging out." On cross-examination, Reina acknowledged that R.H. approached her during the party; it appeared as if something was wrong with him and he looked scared; he expressed fear of defendant; defendant left the party while she was talking with R.H.; and R.H. appeared more comfortable and started having fun after defendant left. Also, later that night when the group, including defendant and R.H., were at Reina's house, the boys were all afraid of defendant; Reina told defendant he had to leave because of what the boys were saying; and defendant became confrontational in a way that Reina associated with him being "high" on some drug other than marijuana.

Defendant also took the stand and essentially reiterated what he stated during the police interview, except with no admissions of sexual misconduct. He denied all the

7

sexual molestation claims and denied he stuck a pipe in R.H.'s mouth.  He testified that at the end of the interview he "falsely confessed" because he felt "stuck" and afraid; he wanted to stop the interview and be left alone; and he was "coming down" from using methamphetamine.

*Jury Verdict and Sentence*

For the offenses against R.H., the jury found defendant guilty of (1) two counts of forcible oral copulation with a child under age 14 and at least seven years younger than the defendant (counts 1 and 2, Pen. Code,[4] §§ 269, subd. (a)(4), 288a), and (2) one count of lewd act on a child under age 14 (count 3, § 288, subd. (a)), with a special allegation of administration of a controlled substance (§§ 667.61, subd. (e)(6), 12022.75).

For the offenses against Y.R., J.S., and J.A., the jury found defendant guilty of three misdemeanor offenses of annoying or molesting a child under age 18 (counts 4, 5, and 6, § 647.6, subd. (a)).  Defendant was also convicted of methamphetamine possession based on the methamphetamine found in his possession at the time of his arrest.  (Health and Saf. Code, § 11377, subd. (a).)

The trial court sentenced defendant to a total term of 45 years to life plus a three-year enhancement for the offenses against R.H. (counts 1 through 3).  The court imposed an eight-month consecutive sentence for count 7 methamphetamine possession, and imposed one-year concurrent jail sentences for the annoying/molesting a child misdemeanor offenses (counts 4 through 6).

---

[4]     Subsequent unspecified statutory references are to the Penal Code.

DISCUSSION

I. *Sufficiency of Evidence of Administration of Controlled Substance*

Defendant argues the evidence does not show there was a controlled substance in the pipe he pushed into R.H.'s mouth so as to support the administration of a controlled substance enhancement alleged in connection with count 3.

In reviewing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. (*Ibid.*) If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Ibid.*)

The jury was instructed that for the administration of a controlled substance allegation, the People had to prove defendant administered either methamphetamine or marijuana to R.H. The record supports the jury's finding that one of these controlled substances was in the pipe defendant shoved in R.H.'s mouth. R.H. testified that after he took a hit from the pipe, "everything was slow," he was "gone," and he blacked out. The jury could reasonably infer there was something in the pipe that made R.H. experience this strong reaction. The evidence also showed that by his own admission defendant was a regular user of methamphetamine and marijuana; he went on binges of methamphetamine use; and he sometimes used a pipe to smoke drugs. Further, several

9

witnesses had observed him using methamphetamine. Y.R. described the methamphetamine he used as white in color; and defendant's sister Carissa described defendant smoking a white drug in a long glass pipe. On the night of the assault on R.H., Carissa saw him in the bedroom holding a glass pipe. Considering all this evidence together, the jury could reasonably deduce that defendant had a habit of smoking drugs, including in a pipe; he had a pipe at the party as shown by Carissa's observation of him in the bedroom; and there was a controlled substance in the pipe as shown by R.H.'s reaction after taking a "hit" and defendant's habit of drug usage.

The record supports that defendant administered a controlled substance to R.H.

## II. *Instruction that Prosecution Need Not Prove Motive*

Defendant argues the trial court erred by providing the jury with the general instruction that the prosecution need not prove the defendant had a motive to commit the crimes because counts 4 through 6—annoying or molesting a child—require a sexual motivation. The Attorney General concedes the error, but argues it was harmless.

Regarding the general instruction on motive, the jury was told: "*The People are not required to prove that the defendant had a motive to commit any of the crimes charged*. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] Having a motive may be a factor tending to show that the defendant is guilty. Not having a motive may be a factor tending to show the defendant is not guilty." (Italics added; see CALCRIM No. 370.) For the offense of annoying or molesting a child, the jury was instructed that the People had to prove a "normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's

10

conduct," and the "defendant's conduct was *motivated by an unnatural or abnormal sexual interest* in the child." (Italics added; see CALCRIM No. 1122; *People v. Lopez* (1998) 19 Cal.4th 282, 289; § 647.6.)

Because the instruction for the offense of annoying or molesting a child defines the mental state element in terms of the defendant's sexual *motivation*, the court's general instruction that motive need not be proven should not have been given without clarifying that this instruction did not obviate the sexual motivation element for the annoying/molesting offense. (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1128-1129; see *People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1140.) However, under the circumstances of this case the error was harmless beyond a reasonable doubt. (See *Maurer, supra*, at p. 1128.) It is clear from the record the jury understood defendant was not guilty of the annoying/molesting offense unless he had a sexual motivation. The jury was expressly instructed that the People had to prove defendant's conduct was motivated by a sexual interest. Further, the jury was instructed on battery as a lesser offense of the charged sex offenses. The battery instruction stated this offense was committed if defendant "touched someone in a harmful or offensive manner." Because the instruction on the battery offense made no mention of a sexual motivation, the jurors would have understood that an essential difference between the annoying/molesting offense and the lesser offense of battery was the presence of sexual motivation for the annoying/molesting offense. Also, the jury was given a general instruction stating some crimes require a general criminal intent, whereas others require a specific intent or mental

11

state, and the annoying/molesting a child offense requires the specific intent or mental state set forth in the applicable instruction for that offense. (See CALCRIM No. 252.)

The sexual motivation requirement for the annoying/molesting a child counts was reinforced by the prosecutor's closing arguments. The prosecutor reiterated the sexual motivation element when discussing these particular counts, and then emphasized that if the jury did not think defendant's conduct related to these counts was sexually motivated, it had to find him not guilty of these charges. The prosecutor stated: "Counts 4 though 6: Annoying or molesting the other boys. . . . [¶] . . . In order to prove this, I have to show . . . . [¶] . . . that his conduct was motivated by an unnatural or sexual interest in the child. [¶] If you think that [defendant] rubbing in circles from the chest going down further, further, further, wasn't sexual; not guilty. Stop right there. If you think that him rubbing from the shoulder, down to the chest, down until he is stopped with the hand wasn't sexual, then that's it; not guilty. Or if you think that when he was grabbing [J.S.'s] penis and stroking it, and then trying to touch his butt wasn't sexual, or while he was dry humping him, then that's it; not guilty."

We assume jurors are reasonably intelligent people. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 708.) Given the express instruction and arguments indicating the People had to prove sexual motivation for the annoying/molesting offense, we have no doubt the jurors understood the instruction generally stating motive need not be proven did not override the more specific instruction setting forth the sexual motivation element for this offense.

### III. *Sentencing Issues*

At sentencing, for the count 3 offense against R.H. (lewd act with controlled substance special circumstance) the court imposed (1) an indeterminate term of 15 years to life under section 667.61 and (2) a determinate three-year term under section 12022.75. Both of these terms were based on the finding defendant had administered a controlled substance in connection with the lewd act.

For counts 1 and 2, forcible oral copulation of R.H. with age disparity, the court imposed two consecutive sentences of 15 years to life.

For count 7 methamphetamine possession, the court imposed an eight-month consecutive sentence (one-third the two-year midterm).

Finally, for counts 4, 5 and 6 (misdemeanor annoying or molesting a child, victims Y.R., J.S. and J.A.) the court imposed one-year jail sentences on each count to run concurrently.

### A. *Error in Sentencing on Count 3*

Defendant argues the court's sentence for the count 3 lewd act offense (§ 288, subd. (a)) improperly punished him twice for the same enhancement allegation of administering a controlled substance; i.e., 15 years to life under section 667.61, and three years under section 12022.75. The Attorney General concedes this error, and we accept this concession.

The administration of a controlled substance enhancement implicates two potentially applicable sentencing statutes: (1) section 667.61 which provides for a life sentence, and (2) section 12022.75 which provides for a three- or five-year sentence.

13

Under section 667.61, the trial court must impose a life sentence for a sex offense specified in section 667.61, subdivision (c), when the sex offense is committed under one circumstance specified in section 667.61, subdivision (e). (§ 667.61, subds. (b), (j)(2).) Here, the count 3 lewd act offense in violation of section 288, subdivision (a) is a specified sex offense (§ 667.61, subd. (c)(8)), and the administration of a controlled substance in violation of section 12022.75 is a specified special circumstance (§ 667.61, subd. (e)(6)). Section 12022.75, which is distinct from the section 667.61 sentencing scheme, provides for a three- or five-year sentence for administration of a controlled substance for the purpose of committing a felony or in the commission of specified felonies.

Generally, a special circumstance (here, drug administration) that triggers application of the section 667.61 sentencing scheme may not be used in dual fashion to impose an additional punishment under another sentencing provision. (§ 667.61, subd. (f); *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 214-215.)[5] The Attorney General does not dispute that this general rule applies here. Accordingly, the three-year sentence

5 Section 667.61, subdivision (f) states: "If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (*l*), or (m) to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, *rather than being used to impose the punishment authorized under any other provision of law*, unless another provision of law provides for a greater penalty or the punishment under another provision of law can be imposed in addition to the punishment provided by this section. . . ." (Italics added.)

14

for the count 3 drug administration allegation under section 12022.75 should not be imposed.

Notwithstanding its concession, the People argue the case should be remanded for resentencing because the trial court was required to impose a sentence of 25 years to life, rather than 15 years to life, for the count 3 offense of lewd act with a drug administration special circumstance. Under the circumstances of this case, we disagree.

Section 667.61 provides for imposition of a 15-year-to-life sentence for sex offenses specified in subdivision (c) that are committed under one of the circumstances specified in subdivision (e). (§ 667.61, subd. (b).) Here, defendant committed a sex offense specified in section 667.61, subdivision (c)(8) (i.e., lewd act, § 288, subd. (a)), under a special circumstance specified in section 667.61, subd. (e)(6) (i.e., administration of a controlled substance). Thus, he qualified for the 15-year-to-life sentence set forth in section 667.61, subdivision (b).

Section 667.61 further provides that the sentence imposed pursuant to subdivision (b) shall be *increased* to 25 years to life if the victim is under age 14. (§ 667.61, subd. (j)(2)).[6] Although defendant's section 288, subdivision (a) lewd act offense by definition

---

[6]    Section 667.61, subdivision (b) states: "*Except as provided in subdivision* (a), *(j),* (l), or (m), *any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e)* shall be punished by imprisonment in the state prison for 15 years to life." (Italics added.)
       Section 667.61, subdivision (j)(2) states: "*Any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age*, shall be punished by imprisonment in the state prison for 25 years to life." (Italics added.)

15

involved a child under age 14, the record shows the prosecution *elected* not to pursue the charges in a manner that triggered the 25-year-to-life term.

First, the information filed by the prosecution makes no reference to *subdivision (j)(2)* of section 667.61 which refers to the 25-year-to-life term when a victim is under age 14. Rather, the information only refers to *subdivision (e)(6)* of section 667.61, which refers to the controlled substance special circumstance.[7] Second, there was no reference to subdivision (j)(2) during trial. And third, at sentencing the prosecution never suggested that the sentence for count 3 should be 25 years to life rather than 15 years to life, and did not object when the court imposed the 15-year-to-life sentence. The manner in which the case was pleaded, tried, and presented at sentencing reflects a decision by the prosecution to pursue the 15-year-to-life sentence rather than the 25-year-to-life sentence.

We are not persuaded by the Attorney General's contention that the 15-year-to-life sentence pursued by the prosecution was unauthorized. " 'It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. . . . This

---

7      For the count 3 lewd act offense, the information states defendant is accused of "a violation of Penal Code section 288, subdivision (a), a felony, in that . . . he did wilfully, unlawfully, and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of . . . (R.H.), a child under the age of fourteen years . . . ." For the count 3 special circumstance, the information states: "SPECIAL ALLEGATION - Penal Code section 667.61(e)(6) [¶] The District Attorney . . . further charges that in the commission of the above offense the defendant . . . administered a controlled substance to the victim in the commission of the above offense within the meaning of Penal Code section 12022.75."

16

prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from " 'the complex considerations necessary for the effective and efficient administration of law enforcement. . . .' " ' 'Generally, prosecutors may elect to proceed under either of two statutes that proscribe the same conduct.' . . . [T]he same principles apply to two different subdivisions of the same statute." (*People v. Cheaves* (2003) 113 Cal.App.4th 445, 452; *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1251-1252.) As stated in *Mitchell*, "it has never been questioned [for example] that a prosecutor may charge a defendant with simple assault when the facts of which the prosecutor is aware would support an assault-with-a-deadly-weapon charge, or that a prosecutor may choose to charge a defendant with a 'straight' first degree murder even though the facts of the case could support a murder-with-special-circumstance charge. Although the Legislature presumably would have the power to specify that an individual who commits a particular [type of criminal] conduct must be prosecuted under a particular statute or not at all, there would have to be a clear indication of such legislative intent before it would be appropriate to construe a statute . . . to preclude a prosecutor from exercising his traditional discretion to charge a defendant with a less serious offense which the facts also support." (*Mitchell, supra*, 49 Cal.3d at pp. 1251-1252.)

Here, the prosecutor elected to pursue a 15-year-to-life sentence, and there is nothing in section 667.61 that affirmatively states the prosecutor was *required* to pursue the case under the harsher 25-year-to-life statutory provision for offenses against victims under age 14. Although section 667.61, subdivision (j)(2) provides for a 25-year-to-life

17

sentence when the victim is under age 14, this sentencing provision does not state the prosecutor must in all cases seek this more severe penalty when exercising its prosecutorial discretion. In this circumstance, the prosecutor's decision not to pursue the 25-year-to-life sentence does not transform the 15-year-to-life term imposed on defendant into an unauthorized sentence. An unauthorized sentence is one that "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 ["Examples of unauthorized sentences include . . . the imposition of concurrent terms when the statute required consecutive terms . . . and the failure to strike or impose an enhancement . . . ."].) The 15-year-to-life sentence was not legally unauthorized because it properly applied to defendant's conduct of committing a statutorily-specified sex offense under the controlled substance special circumstance. The fact the prosecutor exercised its prosecutorial discretion to pursue the 15-year-to-life sentence rather than the 25-year-to-life sentence does not render the 15-year-to-life sentence unauthorized.

We conclude the three-year term for the controlled substance enhancement should be stricken. However, we reject the Attorney General's request that the case be remanded for resentencing based on the 25-year-to-life sentence that could have, but was not, pursued by the prosecution.

B. *Consecutive Versus Concurrent Sentences for Counts 1 and 2*

As set forth above, the trial court imposed a 15-year-to-life term on count 3 (lewd act on R.H. with drug administration special circumstance), and imposed consecutive 15-year-to-life terms for counts 1 and 2 (forcible oral copulation on R.H. under section 269

18

age disparity provision).  Defendant asserts the trial court had the discretion to impose concurrent (rather than consecutive) sentences on counts 1 and 2 if it found counts 1 and 2 occurred on the same occasion, and the court did not exercise its discretion to make this decision.  In response, the Attorney General acknowledges concurrent sentences are a sentencing option but contends the court implicitly found the offenses occurred on separate occasions, thus mandating imposition of consecutive sentences.  Defendant also asserts there was no substantial evidence to support a separate occasion finding.

Counts 1 and 2, consisting of violations of section 269, are governed by the sentencing provision in section 269, subdivision (c), which requires consecutive sentences if the crimes involved the same victim on separate occasions as defined in section 667.6, subdivision (d).  Section 667.6, subdivision (d) defines separate occasions as follows:  "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant *had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior*. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."  (Italics added.)

At sentencing, the trial court addressed the issue of whether section 654 precluded punishment for all three counts involving victim R.H., but did not address whether these crimes were committed on separate occasions under section 667.6, subdivision (d).  The probation report stated the view that section 654 applied to prohibit multiple punishment

19

for the three offenses against R.H. because they arose "out of the same incident."  At the sentencing hearing, the prosecutor disagreed, stating defendant "had the opportunity to think about what he was doing" between each sexual act.  Defense counsel argued section 654 applied and requested concurrent sentences because the acts against R.H. were "all the same act" and did not involve a situation where "you stop, and you pause, and you think . . . ."[8]  The court agreed with the prosecutor, stating that under section 654 and case law the issue was whether there was an "actual break and then a separate act," as opposed to "one continuous act" or "just a slight pause."  The court concluded section 654 was inapplicable because there were "three separate and distinct acts" with "breaks in between" the acts; i.e., defendant placed the victim face down and rubbed his penis on the victim's back, possibly with anal penetration (the § 288, subd. (a) offense), and committed two acts of oral copulation (the § 269 offenses), one in which the defendant orally copulated the victim, and another in which the defendant forced the victim to orally copulate him.

Although the court referenced section 654 rather than section 667.6 when rejecting defendant's claim the three offenses arose from the same incident, any error in this regard was harmless because there is no reasonable probability the court would have made a same-occasion finding had it explicitly considered section 667.6.  (See *People v. Scott,* *supra*, 9 Cal.4th at p. 355 [no reversal for failure to articulate sentencing choices absent

---

8    Although defense counsel requested concurrent sentences, section 654, when applicable, requires that the sentences be stayed.  (*People v. Deloza* (1998) 18 Cal.4th 585, 592.)

reasonable probability of more favorable sentence]; *People v. Fuhrman* (1997) 16 Cal.4th 930, 944 [remand to allow court to exercise its discretion is not required where the trial court's comments indicate it would not impose more lenient sentence]; *People v. Coelho* (2001) 89 Cal.App.4th 861, 889-890.) The record shows the trial court made a clear determination that the evidence reflected three distinct acts with breaks in between, which decisively points to an opportunity to reflect/separate occasion finding. This is not a case where the record affirmatively reflects the court misunderstood the scope of its sentencing discretion and hence failed to consider relevant factors. (See, e.g., *People v. Deloza, supra*, 18 Cal.4th at pp. 599-600.) Here, the trial court made express factual findings that firmly align with a separate occasion finding, thus rendering the failure to refer to section 667.6 harmless.

Defendant's contention the record cannot support a separate occasion finding as a matter of law is unavailing. A finding of separate occasions is unsupported only if "no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.) Reflection can occur without any change in physical location and regardless of the duration of a break between the crimes. (*Id*. at pp. 1091-1092; see *People v. Solis* (2012) 206 Cal.App.4th 1210, 1220 [separate occasion means the offenses are "separated by some other activity, either of the defendant or another, that interrupts the assault and affords the perpetrator an opportunity to reflect on what he or she is doing"].) The record supports that defendant had time to reflect as he engaged in conduct involving significantly different physical acts that required

21

substantial changes in position of both the victim and defendant. Defendant placed the victim face down on the floor, pulled down his pants, laid on top of his back, and then sexually assaulted him from this position. Defendant also placed the victim on his knees, pulled the victim's hair to move his head, and made the victim orally copulate defendant. Finally, defendant placed the victim in a position so defendant could orally copulate the victim. These facts support that as defendant changed his and the victim's positions he had the opportunity to think about what he was doing and to decide to continue with the criminal behavior.

### C. *Calculation of Defendant's Total Sentence*

When a sentence involves both indeterminate and determinate terms, the trial court is required to calculate the indeterminate terms (including any attached determinate-term enhancements) separately from the determinate terms. (*People v. Neely* (2009) 176 Cal.App.4th 787, 798.) Once the court determines the sentences for the indeterminate term offenses and the determinate term offenses, it combines the two to reach an aggregate total sentence, and determines whether the aggregate determinate term will run concurrently or consecutively to the indeterminate term. (*Id*. at pp. 798-799.) This sentencing framework is "conceptualized as sentencing in separate boxes" and "[n]othing in the sentencing for the determinate term crimes is affected by the sentence for the indeterminate term crime." (*Id*. at p. 798.) Thus, the statutory formula for calculating the length of a determinate sentence that is run consecutively to another determinate sentence (i.e., one-third the middle term) is *not* applied to a determinate term that is run

22

consecutively to an *indeterminate* term. (*Id*. at p. 798-799; *People v. Reyes* (1989) 212 Cal.App.3d 852, 856.)

As sentenced by the trial court, defendant's indeterminate "box" consists of the 15-year-to-life terms for counts 1, 2, and 3, plus the three-year enhancement on count 3. Because we are striking the three-year enhancement attached to count 3, defendant's indeterminate sentence now totals 45 years to life.

Defendant's determinate "box" consists of the count 7 felony offense of possession of methamphetamine, and the misdemeanor annoying/molesting a child offenses in counts 4, 5, and 6. The court selected the two-year middle term for count 7, imposed it consecutively, and then imposed the misdemeanor terms concurrently. When implementing its consecutive sentence choice for count 7, the court used the one-third the midterm formula for consecutive sentences to impose an 8-month sentence, stating that count 7 (a determinate term offense) was running consecutively to counts 1 through 3 (indeterminate term offenses). The court's use of the one-third the midterm formula for count 7 improperly mixed the determinate and indeterminate boxes.

However, there is no need to remand for resentencing because the court explicitly stated it was selecting the midterm of two years for count 7, and the only error was in the application of the statutory formula in the context of an aggregate determinate sentence consecutive to an aggregate indeterminate sentence. Thus, it is clear the court selected a consecutive, two-year middle term for count 7. Further, given defendant's total indeterminate sentence of 45 years to life, we are satisfied there is no reasonable probability the court's sentencing choices in the determinate portion of defendant's

23

sentence would have been different had the court realized it could not impose the three-year enhancement in the indeterminate portion of defendant's sentence.

Accordingly, we modify the judgment to strike the three-year enhancement in the indeterminate portion of the sentence, and to impose a consecutive two-year term for count 7 in the determinate portion of the sentence. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473.)

DISPOSITION

For count 3 (lewd act with the special circumstance of administration of a controlled substance), we modify the judgment to strike the three-year sentence imposed for the controlled substance enhancement under section 12022.75. For count 7 (methamphetamine possession), we modify the judgment to impose a two-year middle term. Defendant's total prison term is 45 years to life for counts 1 through 3, and a consecutive two-year determinate term for count 7. As so modified, the judgment is affirmed. The superior court is directed to prepare amended abstracts of judgment for defendant's indeterminate and determinate sentences reflecting these changes and to forward copies to the Department of Corrections and Rehabilitation.


                                                                    HALLER, J.

WE CONCUR:


BENKE, Acting P.J.


HUFFMAN, J.