Filed 1/31/24  P. v. Jensen CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B319741 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA098166) |
| v. | |
| DYLAN JAMES JENSEN, | |
| Defendant and Appellant. | |

Appeal from judgment of the Superior Court of Los Angeles County, Yvette Verastegui, Judge.  Affirmed in part and reversed in part.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In 2018, Dylan James Jensen broke into C.L.'s apartment and sexually assaulted her for 45 minutes. Jensen and the victim were strangers prior to the assault. The District Attorney charged Jensen with burglary, forcible rape, forcible sodomy, forcible oral copulation, and sexual battery.

At trial, Jensen did not dispute that he sexually assaulted C.L. Instead, he pursued an insanity defense, arguing that his abuse of methamphetamine and alcohol had exacerbated his preexisting mental health conditions, rendering him insane at the time he committed the offenses. The jury rejected Jensen's insanity defense and convicted him on all counts charged. The trial court imposed an aggregate sentence of 100 years to life in prison.

Jensen asks us to reverse his convictions, advancing three arguments. First, the trial court misinstructed the jury on his insanity defense. Second, the court abused its discretion in admitting his statements concerning consensual sexual activity in which he purportedly engaged during the hours immediately preceding the assault. Third, the prosecution introduced insufficient evidence to support his conviction on count 7 for sexual battery.

We are not persuaded by Jensen's arguments challenging his convictions. Jensen fails to demonstrate any instructional error, and we disagree that evidence of his ability to distinguish between consensual and nonconsensual sexual activity is irrelevant to his insanity defense. In addition, Jensen's challenge to the sufficiency of the evidence on count 7 is mistaken. In reality, it is no more than a complaint over typographical errors in the relevant jury instruction and verdict form that we may disregard.

Jensen also raises six challenges to his sentence, three of which are meritorious. We agree with Jensen that the trial court must (1) reduce his sentences for forcible sodomy (count 3) and

forcible oral copulation (count 5) from 25 years to life to 15 years to life in prison, (2) strike the concurrent sentences imposed on the forcible rape counts (counts 2 and 4), and (3) strike the mandatory consecutive sentences imposed on counts 2 through 5, and either (a) impose concurrent sentences, or (b) clarify the legal and factual basis for its discretionary determination to impose consecutive sentences on those counts.

We are not persuaded, however, by Jensen's remaining arguments—namely, that (1) Assembly Bill No. 518 entitles him to resentencing, (2) the court abused its discretion in denying the prosecution's motion to dismiss the deadly weapon use enhancements, and (3) section 1385, subdivision (c)(2)(B) mandates dismissal of those enhancements. Each of these arguments is foreclosed by the record and relevant legal authority.

Finally, we agree with Jensen the trial court must correct its error in calculating his presentence custody credits.[1]

Accordingly, we remand Jensen's case to the trial court with instructions to correct the sentencing errors described in this opinion. In all other respects, we affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

### A. The Crimes

At approximately 5:00 a.m. on June 4, 2018, Jensen broke into C.L.'s apartment through a balcony door. He took a knife from

---

[1] Jensen also contends his counsel rendered ineffective assistance by failing to preserve many of his arguments on appeal. Because we address each of Jensen's contentions on the merits, we need not resolve his ineffective assistance claim.

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

the kitchen and then woke C.L. by covering her mouth with his hand, placing the knife near her face, and directing her to "shut up" or "stop." He stabbed the bed several times approximately six inches from C.L.'s legs.

Jensen then straddled C.L., removed her underwear, and said, "We're going to do this," or "This is going to happen." She attempted to take the knife from Jensen, but was unable to do so. Jensen placed his flaccid penis in contact with the exterior of her vagina. At that point she said, "If you're going [to] do this, you have to get rid of the knife."

Jensen put the knife aside and made a number of statements concerning "Zeus," "God," "Jesus," and "[w]omen . . . all cheat[ing] on [him]." While making these statements, Jensen repeatedly touched the exterior and interior of C.L.'s genital area with his still-flaccid penis. C.L. believed he was attempting to achieve an erection by doing so.

Jensen then forced her into several different positions. With her flat on her back, Jensen placed one of her legs over his shoulder. He next placed both her legs over his shoulders and licked her genitalia. He kissed her all over her body (including her genitals), spat on his hands, and placed his spit in her vaginal area. He also touched her clitoris and other parts of her genital region with his hands and forced her to masturbate his penis.

Jensen next instructed C.L. to turn over. While she was on her hands and knees, he unsuccessfully attempted to penetrate her anus with his flaccid penis. Jensen pushed her flat onto her stomach, at which point he achieved an erection and penetrated her anus for approximately 10 minutes.

Finally, Jensen said, "Turn over. This is going to be the last position." He placed C.L. on her back with her legs over his shoulders and penetrated her vagina for approximately five to

4

ten minutes before ejaculating. Jensen then exited C.L.'s apartment through the front door. The assault lasted approximately 45 minutes in its entirety.

C.L. called 911 shortly after Jensen's departure. She provided his physical description, and officers located and detained Jensen within minutes.

A medical examination confirmed C.L.'s injuries were consistent with her vagina being penetrated by a penis and a finger, and her anus being penetrated by a penis. Subsequent DNA analysis confirmed the presence of Jensen's DNA in the victim's vagina and anus, as well as on the knife used during the assault.

### B.  Pretrial Proceedings

#### 1.  *The Information*

The Los Angeles County District Attorney's Office filed an information charging Jensen with first degree burglary (Pen. Code, § 459)[3] (count 1), forcible rape (§ 261, subd. (a)(2)) (counts 2 and 4), sodomy by use of force (§ 286, subd. (c)(2)(A)) (count 3), forcible oral copulation (former 288a, subd. (c)(2)(A)) (count 5), and sexual battery—masturbation (§ 243.4, subd. (d)) (counts 6 and 7).

In addition, the information alleged that Jensen "personally used a deadly and dangerous weapon[ ], to wit, a knife" in committing each of the charged offenses, within the meaning of section 12022, subdivision (b)(1). The information alleged further that, with respect to counts 2, 3, 4, and 5, Jensen's use of a deadly weapon constituted a special circumstance within the meaning of section 667.61, subdivisions (a) and (e).

---

[3] Unless otherwise specified, all statutory references are to the Penal Code.

5

Finally, with respect to counts 2 and 4, the information alleged that Jensen engaged in forcible rape during the commission of first degree burglary, within the meaning of section 667.61, subdivisions (a) and (d).

### 2. *Prosecution's Motion To Dismiss the Deadly Weapon Enhancements Pursuant to Special Directive 20-08*

At a December 16, 2020 pretrial hearing, a deputy district attorney made an oral motion under section 1385 to dismiss the deadly weapon use enhancement allegations, pursuant to Special Directive 20-08. The directive—issued by then-newly elected Los Angeles County District Attorney George Gascón—"instructed deputy district attorneys in pending cases to move to dismiss or withdraw sentence enhancement allegations." (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 486 (*Nazir*).)

During argument, the court confirmed the prosecution brought the motion solely as a result of the "blanket policy" resulting from the special directive, rather than "anything about the circumstances in [the] case . . . [or] Jensen and his criminal history." In addition, the victim appeared at the hearing and expressed that she opposed striking the enhancements.

The court then solicited argument from defense counsel, who urged that Jensen fell squarely within the "spirit of [the] policy" animating the special directive: "The spirit of this policy is to not tack on unnecessary added penalties where the underlying sentence to these charges adequately serve[s] to rehabilitate and punish defendants. [Jensen] as charged is looking at over a hundred years to life in prison. What Mr. Gascón is doing is trying to bring balance to the justice system, not just to ensure justice for our victims but to ensure that there is an even[-]handed way to distribute and mete out sentences. To tack on the additional year

6

[resulting from the enhancement allegations] when [Jensen] is already looking at a minimum of 25 to life is superfluous, it's unnecessary, and justice will be served if the jury convicts . . . Jensen by giving him 25 to life per count."

After noting that it was not bound by either the victim's wishes or the special directive, the court denied the motion. In doing so, the court noted that use of the deadly weapon (the knife) was "inextricably connected to the underlying offenses" and that, if found true, the deadly weapon use enhancements would have a minimal impact on Jensen's total sentence. The court then ruled, "The request [to strike the enhancements] is denied. I don't see how it fits the interest of justice analysis in this particular case."

### C.    The Trial

Jensen's trial consisted of a guilt phase, followed by a sanity phase. During the guilt phase of the trial, C.L. testified at length, describing in detail the 45-minute sexual assault.

Jensen did not dispute that he committed the sexual assault; instead, he pursued an insanity defense. He claimed he was delusional when he committed the assault and believed the victim was his wife. During the sanity phase of the trial, the prosecution and defense each presented multiple expert witnesses who testified concerning Jensen's mental health, including the effects of his longstanding methamphetamine abuse on his psychological condition.

At the conclusion of the sanity phase, the trial court instructed the jury with CALCRIM No. 3450, the pattern insanity instruction.

### D.    Verdicts and Sentencing

The jury convicted Jensen on all seven counts. In addition, it found that Jensen had "personally used a deadly and dangerous

7

weapon" in committing each offense. The jury also found "true" that (1) Jensen's use of the deadly weapon qualified as a special circumstance for purposes of section 667.61, subdivisions (a) and (e) with respect to each count, and (2) Jensen committed counts 2 and 4 during the commission of first degree burglary, within the meaning of section 667.61, subdivisions (a) and (d).

The trial court sentenced Jensen to an aggregate prison term of 100 years to life. The sentence consisted of consecutive terms of 25 years to life on each of the forcible rape, forcible sodomy, and forcible oral copulation counts (counts 2 through 5). In addition, the court imposed separate, concurrent terms of 25 years to life on the rape counts (counts 2 and 4) pursuant to section 667.61, subdivisions (a) and (d). The court also imposed and stayed a four-year sentence on the burglary count (count 1) and imposed three-year sentences in connection with each of the sexual battery counts (counts 6 and 7), to run concurrently with the sentence imposed on count 2. Finally, the court imposed one-year deadly weapons enhancements on each count, although it stayed imposition of the enhancements on counts 1 through 5.

Jensen timely appealed.

## DISCUSSION

### A.    Challenges to Convictions

Jensen mounts three challenges to his convictions, arguing: (1) the trial court misinstructed the jury concerning his insanity defense; (2) the court erroneously admitted evidence of his prior consensual sexual conduct during the sanity phase of the trial; and (3) insufficient evidence supports the conviction on count 7 for sexual battery.

8

### 1. *Jensen Fails to Demonstrate Instructional Error*

Jensen contends we must grant him a new sanity trial because the court incorrectly instructed the jury that, to prove his insanity defense, Jensen must establish both that he was (1) incapable of understanding his conduct was morally wrong, and (2) incapable of understanding his conduct was legally wrong. We disagree.

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

At the sanity phase of a trial, "the defendant has the burden to prove 'by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense.' " (*People v. McCarrick* (2016) 6 Cal.App.5th 227, 246 (*McCarrick*), quoting § 25, subd. (b).) "Our Supreme Court has interpreted this statutory language to mean that insanity can be shown under either the 'nature and quality' prong or the 'right from wrong' prong of the test. [Citation.] The court also has held that 'a defendant who is incapable of understanding that his act is morally wrong is not criminally liable merely because he knows the act is unlawful.' " (*McCarrick, supra,*

9

6 Cal.App.5th at p. 246, quoting *People v. Skinner* (1985) 39 Cal.3d 765, 783.) Thus, even if a jury concludes a defendant understands his conduct is legally wrong, it still may find him not guilty by reason of insanity if it determines he is incapable of understanding his conduct is morally wrong.

Jensen contends the insanity instruction the court provided—modeled on form instruction CALCRIM No. 3450—misinstructed the jury by suggesting he must prove *both* that he could not understand his conduct was legally wrong *and* that he could not understand his conduct was morally wrong. The court instructed the jury as follows:

"The defendant was legally insane if when he committed the crimes, he had a mental disease or defect, and because of that disease or defect, he was incapable of knowing or understanding the nature and quality of his act or was incapable of knowing or understanding that his act was morally or legally wrong."

Jensen contends the jury might have misinterpreted the phrase "morally or legally wrong" to mean "morally and legally wrong." Pointing to English usage guides and a treatise on formal logic, he urges that "[a]s a matter of logic and English grammar, when preceded by a negative"—such as the word "incapable"—the word " 'or' is conjunctive." He argues, for example, "if a person says, 'I am incapable of learning math or science, he means he is incapable of learning math and he is incapable of learning science.' "

Jensen acknowledges the First District in *McCarrick* rejected his reading of CALCRIM No. 3450:

"Defendant argues that the jury might have misinterpreted the phrase 'legally or morally wrong' in the instruction to mean 'morally and legally wrong' and as a result might have concluded defendant must be considered sane if she knew the killings were

unlawful, whether or not she was capable of understanding their moral wrongfulness.  For this contention, she relies on cases noting that the words 'and' and 'or' are sometimes carelessly used in an interchangeable manner.  [Citations.]  But defendant offers no basis other than speculation that the jury adopted this strained reading of the instruction." (*McCarrick*, *supra*, 6 Cal.App.5th at pp. 250–251, italics omitted.)

Although Jensen contends *McCarrick* fails to engage adequately with CALCRIM No. 3450's grammatical structure, he does not dispute that the usual meaning of "or" is disjunctive. Nor does he offer any legal authority supporting his reading of the instruction.  Moreover, even if the instruction's grammar could have created some ambiguity, Jensen points to nothing in the record establishing " 'a reasonable likelihood the jury applied the instruction' " in the manner he suggests.  (*Mitchell*, *supra*, 7 Cal.5th at p. 579; see *People v. Alsemi* (1890) 85 Cal.434, 435 [in determining whether jury was misled by language in an instruction, courts "must consider it by the light of common understanding, rather than the strict rules of grammar, and also in connection with its context"].)

To the contrary, the record reflects that defense counsel and the prosecutor each emphasized the disjunctive meaning of the word "or" in other phrases of the jury instructions.  And neither the defense nor the prosecution made any arguments concerning the distinction between a legal wrong and a moral wrong.

We therefore conclude that Jensen has failed to establish his claim of instructional error.

11

## 2. *The Trial Court Acted Within Its Discretion in Admitting Evidence of Jensen's Consensual Sexual Conduct*

Jensen argues the trial court abused its discretion by permitting Dr. Rad and Dr. De Armas, expert witnesses offered by the prosecution, to testify during the sanity trial phase concerning statements Jensen made about his participation in two consensual sexual encounters in the hours preceding the crimes. Again, we disagree.

Dr. Rad's challenged testimony spans less than two pages of transcript. He testified, in relevant part:

"[Jensen] told me about two sexual encounters . . . he had [in the hours leading up to the crimes]. [¶] . . . [¶] . . . He told me that a homeless couple invited him into their tent. They offered him vodka, and the three of them had sex, and he left their tent at around 2:00 a.m. and they gave him marijuana and vodka, as he left.

"[¶] . . . [¶]

"[Jensen] described that at approximately 3:00 a.m. a man in a gray Honda pulled up and invited him into the car. He told me that they snorted crystal methamphetamine together and had oral sex."

The allegedly objectionable testimony from Dr. De Armas appears on a single page of transcript:

"[Jensen said] that he had been in a tent with a couple having sex with them and drinking alcohol and shooting up. [¶] . . . [¶] . . . He said that he did a line of crystal [methamphetamine], he started going crazy, and, '[he] thought the world was going to implode.'"

Jensen argues this testimony was irrelevant under Evidence Code section 210[4] and unduly prejudicial under Evidence Code section 352[5] because it "was highly inflammatory and risked an emotional response from jurors repulsed by Jensen's seemingly compulsive and indiscriminate sexual behavior."

We conclude, however, Jensen's statements concerning his participation in consensual sexual activity immediately prior to the crimes are relevant because they suggest he could distinguish consensual from nonconsensual sexual activity. And as set forth in the Discussion *ante*, part A.1, whether Jensen could distinguish between right and wrong was a key issue during the sanity phase of his trial. We conclude further the testimony was not unduly prejudicial. The testimony was neither lengthy nor graphic. And it was far less inflammatory than the properly admitted testimony of C.L. describing the sexual assault Jensen committed against her—an assault defense counsel conceded in closing argument was "a very violent rape."

Accordingly, we are not persuaded the court abused its discretion in admitting the challenged testimony from Drs. Rad and De Armas. In addition, because we disagree with Jensen's

---

[4] Evidence Code section 210 provides: " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

[5] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

13

characterization of this brief, relevant testimony as "highly inflammatory," we reject his contention that its admission rendered his trial fundamentally unfair in violation of due process.  (See *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["[t]he admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair"].)

### 3.    *Jensen's Challenge to Count 7 Fails*

We also are unpersuaded by Jensen's arguments concerning his conviction for sexual battery charged in count 7—arguments he incorrectly characterizes as challenging the sufficiency of the evidence supporting the conviction.

Both count 6 and count 7 of the information charged Jensen with sexual battery in violation of section 243.4, subdivision (d). That subdivision prohibits a defendant from forcing a victim "to masturbate or touch" the defendant's "intimate part[s]."  (§ 243.4, subd. (d).)[6]  At trial, the evidence showed that—in addition to violating subdivision (d) of section 243.4—Jensen violated subdivision (a) of that section, which prohibits a defendant from

---

[6] Section 243.4, subdivision (d) provides in full:  "Any person who, for the purpose of sexual arousal, sexual gratification, or sexual abuse, causes another, against that person's will while that person is unlawfully restrained either by the accused or an accomplice, or is institutionalized for medical treatment and is seriously disabled or medically incapacitated, to masturbate or touch an intimate part of either of those persons or a third person, is guilty of sexual battery.  A violation of this subdivision is punishable by imprisonment in a county jail for not more than one year, and by a fine not exceeding two thousand dollars ($2,000); or by imprisonment in the state prison for two, three, or four years, and by a fine not exceeding ten thousand dollars ($10,000)."

14

"touch[ing] an intimate part of another person" against that person's will.  (§ 243.4, subd. (a).)[7]

The trial court therefore permitted the prosecution to modify the relevant jury instruction and verdict form to reflect its allegations that Jensen had violated section 243.4, subdivision (a) by touching an intimate part of the victim against her will. Jensen did not object to these modifications at trial.  The modified instructions and verdict form for count 7 correctly describe the conduct prohibited by subdivision (a) of the statute.  They contain a typographical error, however, in that they state the prohibited conduct violates subdivision (d), rather than subdivision (a), of section 243.4.  Jensen argues that, in light of this error, the prosecution failed to introduce sufficient evidence in support of the count 7 conviction.

Critically, however, Jensen did not dispute at trial that he committed acts against the victim that violated subdivision (a) of section 243.4.  He also effectively concedes this point on appeal. Thus—notwithstanding that Jensen characterizes his challenge as one to the sufficiency of the evidence supporting count 7— in reality, his complaint is one of clerical error.  And " 'technical defects in a verdict may be disregarded if the jury's intent to convict

_____

[7] Section 243.4 subdivision (a) provides in full:  "Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery.  A violation of this subdivision is punishable by imprisonment in a county jail for not more than one year, and by a fine not exceeding two thousand dollars ($2,000); or by imprisonment in the state prison for two, three, or four years, and by a fine not exceeding ten thousand dollars ($10,000)."

15

of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.  [Citations.]' [Citations.]"  (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272–1273.)

Here, the language of the count 7 jury instructions and verdict form demonstrate the jurors "unmistakably" intended to convict Jensen of the conduct prohibited by section 243.4, subdivision (a).  In addition, Jensen suffered no prejudice resulting from the typographical errors.  The record reflects that Jensen was aware no later than opening statements that the prosecution's theory included that he committed sexual battery by putting his hands on the victim's vagina—a violation of subdivision (a) of the statute.  Moreover, as noted, Jensen conceded in opening statement that he engaged in all the sexual conduct alleged by the prosecution.

Accordingly, Jensen's challenge to count 7 fails.

### B.    Challenges to Sentence

Having rejected Jensen's various challenges to his convictions, we turn to the arguments he raises concerning six purported sentencing errors.  We agree with Jensen that the trial court must (1) reduce the sentences imposed on counts 3 and 5 to 15 years to life, (2) strike the concurrent 25-year-to-life sentences imposed on counts 2 and 4 under section 667.61, subdivision (e), and (3) either (a) impose concurrent sentences on counts 2 through 5, or (b) clarify the legal and factual basis for its discretionary determination to impose consecutive sentences on those counts. We, however, reject Jensen's remaining challenges to his sentence.

16

### 1. ***The Trial Court Must Correct Jensen's Sentences on Counts 3 and 5***

The parties agree, as do we, that the trial court must correct Jensen's sentences on count 3 (sodomy by use of force) and count 5 (forcible oral copulation).

At sentencing, the court imposed sentences of 25 years to life on these counts pursuant to the "One Strike" law, section 667.61. That section provides, in relevant part, where a defendant is convicted of certain specified offenses (which include those charged in counts 3 and 5) "under one or more of the circumstances specified in subdivision (d) or under *two or more of the circumstances specified in subdivision (e)*," the court shall impose a sentence of 25 years to life. (§ 667.61, subd. (a), italics added.) The section provides further that, where a defendant is convicted under only "*one* of the circumstances specified in subdivision (e)," the court shall impose a sentence of 15 years to life. (*Id.*, subd. (b), italics added.)

Here, the prosecution pleaded and proved only one circumstance specified in subdivision (e)—namely that Jensen "personally used a dangerous or deadly weapon" in committing the offense. (§ 667.61, subd. (e)(3).) The court therefore erred in imposing sentences of 25 years to life on counts 3 and 5. On remand, the court is directed to correct the sentences on those counts to reflect sentences of 15 years to life, pursuant to section 667.61, subdivision (b).

### 2. ***The Trial Court Must Strike Jensen's Concurrent Sentences on Counts 2 and 4***

The parties also agree the trial court erred in sentencing Jensen on counts 2 and 4, both of which charged Jensen with forcible rape. The parties dispute, however, the nature of the error and the appropriate remedy.

17

The court properly imposed a sentence of 25 years to life in connection with each count based on the jury's determination that Jensen committed forcible rape "during the commission of first degree burglary . . . within the meaning of . . . section[ ] 667.61[, subdivisions] (a) and (d)." But the court also imposed a separate, concurrent sentence of 25 years to life on each count based on its determination that Jensen committed the offenses "under two or more of the circumstances specified in subdivision (e)" of section 667.61. (§ 667.61, subd. (a).) This was error because, as set forth in the Discussion *ante*, part B.1, the prosecution pleaded and proved only one subdivision (e) circumstance—namely, use of a dangerous or deadly weapon in committing the offenses.

The Attorney General contends we should direct the trial court to reduce Jensen's concurrent sentences on counts 2 and 4 to 15 years to life pursuant to subdivision (b) of section 667.61, which provides that a defendant convicted of a qualifying offense under only one subdivision (e) circumstance "shall be punished by imprisonment in the state prison for 15 years to life." (§ 667.61, subd. (b).)

Jensen counters that the appropriate remedy is to strike the concurrent sentences in their entirety because "[s]ection 667.61 is an alternate sentencing statute," rather than "an enhancement statute." Thus, Jensen contends that "[i]ts subdivisions do not set forth enhancements for such acts as use of a deadly weapon or burglary. These are merely circumstances that when proved determine whether a defendant will receive a 25-years-to-life sentence under subdivision (a) or a 15-years-to-life sentence under subdivision (b)."

We agree the authorities on which Jensen relies support his contention that "[s]ection 667.61 is an alternate penalty scheme that, when charged, defines the length of imprisonment for the

18

substantive offense."  (*People v. Perez* (2010) 182 Cal.App.4th 231, 239; see *People v. Waqa* (2023) 92 Cal.App.5th 565, 577 ["[t]he One Strike law 'provides an alternative, more severe set of penalties for certain sex offenses committed under certain enumerated circumstances.' [Citation.]  A one strike term is ' " 'an alternate penalty for the underlying felony itself,' " ' not a sentence enhancement that adds ' " ' "an additional term of imprisonment" . . . to a "base term" ' " ' "].)

Accordingly, the trial court must strike the concurrent sentences imposed on counts 2 and 4 under section 667.61, subdivision (e).

### 3.     *The Trial Court Erred in Imposing Mandatory Consecutive Sentences on Counts 2 Through 5*

Jensen argues the trial court failed to articulate adequately its reasons for imposing consecutive sentences on counts 2 through 5, pursuant to section 667.61, subdivision (i), which incorporates by reference section 667.6, subdivision (d).  He asks that we remand for the court to make a finding on whether the crimes occurred "on separate occasions" for purposes of section 667.6, subdivision (d)— an inquiry that requires the court to consider whether the defendant "had a reasonable opportunity to reflect" between the commission of certain sex crimes.

Once a trial judge has found under that subdivision that crimes occurred on separate occasions, we are " 'not at liberty to overturn the result unless no reasonable trier of fact could decide that there was a reasonable opportunity for reflection.' [Citation.]" (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1314–1315.)  Here, we conclude no reasonable trier of fact could find from the evidence a reasonable opportunity to reflect during the sequence of events at issue, and the court thus erred to the extent it relied

19

on sections 667.61, subdivision (i) and 667.6, subdivision (d)'s mandatory consecutive sentencing provisions in sentencing Jensen on counts 2 through 5. We cannot, however, discern from the record whether the court intended to rely on these provisions or its separate discretionary authority in imposing the consecutive sentences.[8] We therefore remand with directions to the trial court to (1) order the sentences on counts 3 through 5 to run concurrently to the sentence on count 2, or (2) reimpose the consecutive sentences on counts 2 through 5 and clarify on the record the legal and factual basis for its discretionary determination to do so.

Under section 667.61, subdivision (i), "the court is required to impose consecutive sentences for multiple violations [of certain specified offenses, including those charged in counts 2 through 5] where 'the crimes involve . . . the same victim on separate occasions

---

[8] We requested supplemental briefing from the parties concerning whether a trial court possesses discretionary authority to impose consecutive sentences even where a defendant's offenses do not fall within the scope of the mandatory consecutive sentencing provisions of sections 667.61, subdivision (i) and 667.6, subdivision (d). The parties agree, as do we, that section 667.6, subdivision (c) and section 669 vest the trial court with such authority. (See § 667.6, subd. (c) ["[i]n lieu of the term provided in [s]ection 1170.1, a full, separate, and consecutive term may be imposed for each violation of an [enumerated] offense . . . if the crimes involve the same victim on the same occasion"]; § 669 ["[w]hen a person is convicted of two or more crimes . . . whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively"]; see also Cal. Rules of Court, rule 4.426(b).)

20

as defined in subdivision (d) of [s]ection 667.6.' " (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 265 (*Dearborne*).)

Section 667.6, subdivision (d)(2), in turn, provides, "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned the opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d)(2).)

In upholding this standard against claims of unconstitutional vagueness, one court observed that "[i]t takes no particular depth of reasoning to be able to distinguish between a situation where a perpetrator engages in a continuous course of conduct involving multiple sex offenses with no break in between and one in which the individual offenses are separated by some other activity, either of the defendant or another, that interrupts the assault and affords the perpetrator an opportunity to reflect on what he or she is doing. The activity need not involve any type of movement of the victim and need not be of any particular duration. It may be nothing more than car lights going by that cause the perpetrator to pause and reflect before proceeding . . . or some activity not amounting to a sex offense, like pausing to listen to the victim's answering machine or punching the wall . . . . We believe a perpetrator can reasonably be held to recognize this distinction." (*People v. Solis* (2012) 206 Cal.App.4th 1210, 1220.)

In distinguishing a continuous course of conduct with no break versus a course of conduct in which the offenses are

21

separated, "courts have held, for example, the offenses of placing a finger in the victim's vagina, kissing her genitals and then placing his penis in her vagina were but a single occasion. [Citations.] Similarly, where a defendant raped the victim, then ' "got off of her, twisted her by the legs violently, and orally copulated her," ' the offenses occurred on a single occasion. [Citations.]

"In contrast, where the offenses are interrupted by the defendant's nonsexual activity, they occur on a separate occasion. [Citations.] Where a defendant left a car after a bout of sexual assault, but returned 15 minutes later and raped the victim a second time, the second rape occurred on a separate occasion. [Citation.] Where the defendant moved the victim from one place to another, and also stopped an assault to listen to the victim's answering machine before resuming, the offenses occur[red] on separate occasions. [Citations.] Where the defendant's assault was interrupted by the outside event of an observer driving by, but [the defendant] then resumed the assault, it indicated reflection by the defendant, and the second assault occurred on a separate occasion. [Citations.]" (*Dearborne*, *supra*, 34 Cal.App.5th at pp. 265–266.)

Here, the crimes charged in count 2 (forcible rape), count 3 (sodomy by use of force), count 4 (forcible rape), and count 5 (forcible oral copulation) did not occur on separate occasions for purposes of sections 667.61, subdivision (i) and 667.6, subdivision (d). The crimes occurred as part of a single attack on the victim, and nothing in the record indicates "the offenses [were] interrupted by . . . nonsexual activity." (*Dearborne*, *supra*, 34 Cal.App.5th at p. 266.) To the extent Jensen changed C.L.'s position, it was part and parcel of the sexual assault, was accomplished within seconds and did not involve a break in the assault, and did not provide him a reasonable opportunity to reflect upon his actions.

Accordingly, the court erred to the extent it relied on sections 667.61, subdivision (i) and 667.6, subdivision (d) in imposing consecutive sentences on counts 2 through 5.  On remand, the court therefore is directed either to impose concurrent sentences on those counts or to clarify the basis for its discretionary imposition of consecutive sentences.

### 4. *Assembly Bill No. 518's Amendments to Section 654 Do Not Entitle Jensen to Resentencing*

Jensen next contends that "in light of . . . recently passed Assembly Bill [No.] 518, [his] case should be remanded for resentencing."  (Boldface & capitalization omitted.)  We disagree.

Penal Code section 654 "precludes multiple punishments for a single act or indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)  The former version of the statute provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment."  (Former § 654, subd. (a).)  Assembly Bill No. 518 amended section 654 by removing the requirement that courts impose sentence using the provision of law with the longest potential prison term, thereby affording courts discretion to impose punishment under any of the applicable provisions.  (See Stats. 2021, ch. 441, § 1; amended § 654, subd. (a), eff. Jan. 1, 2022.)

Here, the trial court imposed punishment on the sex offense counts—which carried the longest potential prison terms of the crimes charged—and stayed punishment on the burglary count. "In doing so," Jensen contends, "the court gave no indication it was aware of the discretion granted it under amended section 654 to stay sentence on the sex offenses that arose out of the same indivisible course of conduct as the burglary."  He urges that

23

we therefore must remand his case for resentencing because " '[d]efendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)"

But "[i]n the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' [Citations.]" (*People v. Thomas* (2011) 52 Cal.4th 336, 361; see Evid. Code, § 664.)  And Jensen points to nothing in the record demonstrating affirmatively that the court was unaware of its newly expanded discretion under section 654.

To the contrary, defense counsel emphasized at sentencing that "the court is not required to give the max[imum sentence], obviously, it is discretionary."  Moreover, the court's comments at the sentencing hearing—including that the court was "in awe of [the victim's] . . . courage and . . . strength," that Jensen used a knife during the crimes, and that the victim was "particularly vulnerable due to her age"—indicate it was not inclined to impose a lesser punishment pursuant to section 654.

We therefore are not persuaded that we should remand this matter for resentencing in light of Assembly Bill No. 518.

### 5. *The Trial Court Acted Within Its Discretion in Denying the Prosecutor's Motion To Dismiss the Deadly Weapon Enhancements*

We similarly are unpersuaded by Jensen's argument that the trial court abused its discretion by denying the prosecutor's motion to dismiss the section 12022, subdivision (b)(1)[9] deadly

---

[9] Section 12022, subdivision (b)(1) provides:  "A person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year,

weapon enhancement allegations without "giv[ing] more careful consideration to Special Directive 20-08, particularly the research and policy statements contained therein."

Jensen does not dispute that, notwithstanding any special directive issued by the District Attorney's Office, the trial court retained discretion to deny the motion. (See *Nazir*, *supra*, 79 Cal.App.5th at p. 499 ["[c]ontrary to the position of the district attorney . . . a prosecutor's motion to dismiss an enhancement under section 1385 is not 'a constitutionally protected exercise of prosecutorial discretion,' and the trial court may deny such a motion"].) Nor does he point to any authority holding that a court abuses its discretion by failing to discuss expressly "the research and policy statements" contained in Special Directive 20-08 in denying a section 1385 motion to strike an enhancement.

Moreover, nothing in the record indicates the court misunderstood the scope of its discretion or failed to consider the special directive in exercising that discretion. To the contrary, the record reflects the court invited argument from defense counsel, who highlighted the policy considerations underlying the special directive and urged that Jensen fell squarely within the directive's "spirit."

Accordingly, we conclude the court acted within its discretion in denying the prosecution's motion to dismiss the deadly weapon use enhancement allegations.

---

unless use of a deadly or dangerous weapon is an element of that offense."

### 6. *Section 1385, Subdivision (c)(2)(B) Does Not Mandate Dismissal of Six of the Seven Deadly Weapon Enhancements*

Also unconvincing is Jensen's argument that recent amendments to section 1385 mandate that we direct the trial court to strike all but one of the section 12022, subdivision (b)(1) deadly weapon enhancements.

"As amended by Senate Bill No. 81, section 1385 grants trial courts 'the authority'—and simultaneously imposes upon them a duty—'to strike or dismiss [a sentencing] enhancement' . . . if doing so is 'in the furtherance of justice.' [Citations.] Section 1385 makes clear that whether dismissal of an enhancement is 'in the furtherance of justice' is a 'discretion[ary]' call for the trial court to make. [Citations.] Senate Bill No. 81 amended section 1385 to fine[-]tune how a court is to exercise that discretion: Specifically, section 1385 now enumerates nine 'mitigating circumstances,' and mandates that the presence of any such circumstance '*weighs greatly* in favor of dismissing the enhancement . . . unless the court finds that dismissal of the enhancement would endanger public safety.' [Citation.] Dismissal endangers public safety if 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' [Citation.]" (*People v. Walker* (2022) 86 Cal.App.5th 386, 395 (*Walker*), italics omitted, review granted Mar. 22, 2023, S278309.)[10]

---

[10] The Supreme Court granted review concerning only whether "the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances [citation] create[s] a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety." (*People v. Walker*, S278309, Supreme Ct. Mins., Mar. 22, 2023.)

The mitigating circumstance on which Jensen relies appears in section 1385, subdivision (c)(2)(B), which provides:

"Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).)

Pointing to the word "shall" in the last sentence of section 1385, subdivision (c)(2)(B), Jensen argues that the trial court here erred by failing to dismiss all but one of the seven deadly weapon use enhancements charged against him.

Considered in isolation, the subdivision's language could support Jensen's interpretation. We agree, however, with the decisions concluding that—construed in its broader statutory context—section 1385, subdivision (c)(2)(B) does not compel a trial court to dismiss all but one sentencing enhancement where multiple enhancements are charged. (See, e.g., *People v. Anderson* (2023) 88 Cal.App.5th 233, 239 (*Anderson*), review granted Apr. 19, 2023, S278786 [construed in the "context of the statute as a whole" "dismissal of . . . enhancements" under section 1385, subdivision (c)(2)(B) "is not mandatory," internal quotations omitted]; *Walker*, *supra*, 86 Cal.App.5th at p. 396 ["[i]n our view, the text and purpose of section 1385 in general, and Senate Bill No. 81 in particular, as well as the canons of statutory construction, counsel in favor of concluding that the phrase 'all enhancements beyond a single enhancement shall be dismissed' in subdivision (c)(2)(B) does not obligate trial courts to automatically dismiss all but one enhancement whenever a jury finds multiple enhancements to be true"].)

In particular, we find the following analysis in *Anderson* persuasive:

"Here, the statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that

27

a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' [Citation.] In other words, the dismissal of the enhancement is conditioned on a court's finding dismissal is in the interest of justice. The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety. [Citation.] This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal. [¶] It is within these boundaries that section 1385 states the court 'shall' dismiss all but one enhancement . . . . The dismissal *shall* occur but only *if*, in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Anderson*, *supra*, 88 Cal.App.5th at pp. 239–240, italics omitted.)

Jensen urges that *Anderson* and other decisions rejecting his proposed interpretation of section 1385, subdivision (c)(2)(B) are wrongly decided. He insists that because "courts had the authority to dismiss enhancements in the furtherance of justice" before Senate Bill No. 81's enactment, the Legislature must have intended the bill to do something more—namely, "to *require* courts to do something which, pre-[Senate Bill No.] 81, they could choose in their discretion to either grant or deny." Jensen ignores, however, that Senate Bill No. 81 did something more than reiterate trial courts' existing discretion under section 1385: It provided new, specific guidance concerning how courts should exercise that discretion. (*Anderson*, *supra*, 88 Cal.App.5th at p. 238 ["[p]rior

28

to January 1, 2022, section 1385 . . . did not provide direction as to how courts should exercise [their] discretion. . . . Senate Bill No. 81 . . . amended section 1385 to provide guidance regarding the exercise of discretion in dismissing sentencing enhancements," italics omitted].)

Accordingly, we reject Jensen's contention that section 1385, subdivision (c)(2)(B) mandates the dismissal of all but one of the deadly weapon enhancements imposed against him.

### C. Jensen Is Entitled to 1,405 Days of Presentence Custody Credit

Finally, we agree with the parties that the trial court must correct the abstract of judgment to reflect that Jensen is entitled to 1,405 days of presentence credit. The trial court granted Jensen only 1,374 days of credit. Jensen, however, was arrested on June 4, 2018 and sentenced on April 8, 2022. He therefore is entitled to 1,405 days of presentence custody credit. (See *People v. Fuentes* (2022) 78 Cal.App.5th 670, 681 [" '[a] defendant is entitled to credit for all days in presentence custody including the day of arrest and the day of sentencing' "].)

29

## DISPOSITION

We remand with directions to the trial court to (1) reduce each sentence on counts 3 and 5 to 15 years to life, (2) strike each concurrent 25-years-to-life sentence imposed on counts 2 and 4 pursuant to section 667.61, subdivision (e), (3) direct that the sentences on counts 3 through 5 are to run concurrent to the sentence on count 2, or clarify the legal and factual basis for its discretionary determination to impose consecutive sentences on those counts, and (4) correct the abstract of judgment to reflect Jensen's entitlement to 1,405 days of presentence custody credit. The court shall prepare an amended abstract of judgment and shall forward it to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:




BENDIX, J.




WEINGART, J.

30